**Richard COPPOLINO, Petitioner**

**v.**

**Commissioner of the Pennsylvania State Police, Frank NOONAN, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 18, 2014.

Decided Oct. 14, 2014.

Burton A. Rose, Philadelphia, for petitioner.

Sue Ann Unger, Senior Deputy Attorney General, Philadelphia, for respondent.

BEFORE: DAN PELLEGRINI, President Judge, and BERNARD L. McGINLEY, Judge, and RENÉE COHN JUBELIRER, Judge, and ROBERT SIMPSON, Judge, and MARY HANNAH LEAVITT, Judge, and PATRICIA A. McCULLOUGH, Judge, and ANNE E. COVEY, Judge.

OPINION BY Judge RENÉE COHN JUBELIRER.

Before this Court, in our original jurisdiction, are cross-motions for summary judgment filed by Richard Coppolino (Coppolino) and the Commissioner of the Pennsylvania State Police (PSP), Frank Noonan (Commissioner), on Coppolino's Petition for Review in the Nature of a Petition for a Writ of Mandamus (Petition). In his Petition, Coppolino asks this Court to direct the Commissioner to remove Coppolino's name from the list of offenders required to comply with the provisions of the law known as Megan's Law IV or the Sexual Offender Registration and Notification Act (SORNA).[1,2] In essence, Coppolino argues

---

**1.** Sections 9799.10–9799.41 of the Sentencing Code, 42 Pa.C.S. §§ 9799.10–9799.41. In this opinion, we shall refer to this statute as Megan's Law IV. Courts have also referred to the current statute as the Adam Walsh Child Protection and Safety Act or Adam Walsh Act, *see, e.g., Commonwealth v. M.W.*, 614 Pa. 633, 39 A.3d 958, 968 (2012) (Baer, J., concur-

that, because he completed his sentence, including probation, before Megan's Law IV was enacted, certain provisions as applied to him constitute an unconstitutional *ex post facto* punishment.

## I. Background

On April 30, 2013, Coppolino filed his Petition with this Court seeking relief in the nature of mandamus alleging that Megan's Law IV constitutes an impermissible *ex post facto* punishment and is unconstitutionally overbroad in its application to Coppolino. Coppolino also alleged that the wording of the statute regarding which individuals are required to register did not include him because he never failed to register under Megan's Law III. The following facts, alleged in Coppolino's Petition, are not in dispute.[3] Coppolino "was found guilty of Involuntary Deviate Sexual Intercourse, Aggravated Indecent Assault, Simple Assault, Recklessly Endangering Another Person, Unlawful Restraint, Terroristic Threats, and Intimidation of a Witness" on August 3, 2001, after a jury trial. (Petition ¶ 1; Answer and New Matter (Answer) ¶ 1.) On November 26, 2001, Coppolino was sentenced to five to ten years of imprisonment followed by three years of probation. (Petition ¶ 2; Answer ¶ 2.) During his incarceration, Coppolino filed a Petition for Relief under the Post Conviction Relief Act[4] and, in an agreement to resolve the suit, Coppolino was resentenced on June 25, 2007, to a term of thirty-five months and eleven days to seventy months and twenty-two days imprisonment running from the date of his conviction, August 3, 2001 (effectively time served), followed by three years of probation. (Petition ¶ 3; Answer ¶ 3.)

At his resentencing, in June 2007, Megan's Law III was in effect and Coppoli-

ring); *Commonwealth v. Partee*, 86 A.3d 245, 246 (Pa.Super.2014). However, the federal statute which, in part, spurred some of the amendments giving rise to the current statute is also titled the Adam Walsh Child Protection and Safety Act of 2006, Pub.L. 109–248, 120 Stat. 587, 42 U.S.C. §§ 16901–16991.

**2.** The Supreme Court has described the history of Pennsylvania's Megan's Law as follows:

The Act of October 24, 1995, P.L. 1079 (Spec.[ ] Sess. No. 1), now known as Megan's Law I, was to a significant extent ruled unconstitutional in *Commonwealth v. Donald Williams*, 557 Pa. 285, 733 A.2d 593 (1999). The General Assembly subsequently enacted Megan's Law II, whose constitutionality this Court substantially upheld in *Commonwealth v. Gomer Williams*, 574 Pa. 487, 832 A.2d 962 (2003). In the Act of November 24, 2004, P.L. 1243 (known as Megan's Law III), the General Assembly addressed several matters, including that portion of Megan's Law II held to be unconstitutional in *Gomer Williams*, concerning the penalty provisions that attached to sexually violent predators who failed to comply with registration and other requirements of the act. In the Act of November

29, 2006, P.L. 1567 (effective January 1, 2007), the General Assembly amended the legislation once again. . . .

*Commonwealth v. Leidig*, 598 Pa. 211, 956 A.2d 399, 400 n. 1 (2008). In 2011, the General Assembly substantially revised Megan's Law setting out the provisions, subject to minor subsequent amendments, we refer to as Megan's Law IV. In *Commonwealth v. Neiman*, —— Pa. ——, 84 A.3d 603, 615–16 (2013), the Pennsylvania Supreme Court struck various provisions of Megan's Law III on the grounds that the Act of November 24, 2004, P.L. 1243 (Act 152), violated the single subject rule of Article III, Section 3 of the Pennsylvania Constitution. The majority of these provisions had already expired, per Section 9799.41 of Megan's Law IV, 42 Pa.C.S. § 9799.41, as well as other amendments to Megan's Law. *Neiman*, 84 A.3d at 606–07 nn. 8–18.

**3.** "A motion for summary relief may be granted only where no material fact is in dispute and the right of the moving party to relief is clear." *Brown v. Pennsylvania Department of Corrections*, 932 A.2d 316, 318 (Pa.Cmwlth. 2007).

**4.** 42 Pa.C.S. §§ 9541–9546.

no's conviction for Involuntary Deviate Sexual Intercourse would render him a lifetime registrant. Section 9795.1(b)(2) of Megan's Law III, *formerly* 42 Pa.C.S. § 9795.1(b)(2)[5] (designating individuals convicted of involuntary deviate sexual intercourse as lifetime registrants). Under Megan's Law III, Coppolino was required to: (1) register his current and intended residences; (2) register current or intended employment; (3) register schools where he was currently enrolled or intended to enroll as a student; (4) update any changes to the registered information within 48 hours; (5) submit to photographing and fingerprinting; and (6) verify his residence annually in person. Sections 9795.2 and 9796 of Megan's Law III, *formerly* 42 Pa.C.S. §§ 9795.2, 9796. Section 4915(c) of the Crimes Code provides, in pertinent part, that failure to comply with these requirements of Megan's Law III could result in a second-degree felony conviction for a first offense, while failure to provide accurate information when registering or verifying constituted a first-degree felony. 18 Pa.C.S. § 4915(c)(2), (4). Coppolino registered with the PSP upon his release from incarceration and verified his registration yearly thereafter. (Sexual Offender Registration, June 26, 2007, Answer Ex. R4.)

Coppolino filed a Petition for Writ of Habeas Corpus with the Montgomery County Court of Common Pleas (trial court) on June 16, 2010, asserting that the trial court had failed to inform him at any time of his Megan's Law III registration requirements. (Petition ¶ 5; Answer ¶ 5.) The trial court denied this petition and Coppolino appealed. The Superior Court held that Coppolino's claim was not amenable to habeas corpus relief and that, despite the trial court's failure to inform him of the registration requirements, Coppolino was still required to comply with Megan's Law III. *Commonwealth v. Coppolino*, 40 A.3d 193 (Pa.Super., No. 80 EDA 2011, filed December 16, 2011), slip op. at 5, 9. Nonetheless, the Superior Court remanded the matter to the trial court to allow the trial court to inform Coppolino of his Megan's Law obligations. *Id.*, slip op. at 9. However, at the time Coppolino filed his Petition with this Court, the trial court had not yet done so.[6]

On December 20, 2011, approximately five months after Coppolino completed his sentence, including probation, Pennsylvania enacted Megan's Law IV, which went into effect a year later, on December 20, 2012. On December 3, 2012, the PSP sent Coppolino a letter notifying him that, as of December 20, 2012, he would have to comply with the requirements of Megan's Law IV, under which he was designated a Tier III offender.[7] (Letter from PSP to Cop-

---

5. This provision, along with the other provisions of Megan's Law III discussed in this paragraph, expired on December 20, 2012 per Section 9799.41 of Megan's Law IV, 42 Pa.C.S. § 9799.41.

6. The Commissioner attached to his Cross-Motion for Summary Judgment the transcript of a colloquy, dated October 24, 2013, between Coppolino and the trial court informing Coppolino of his registration requirements.

7. Section 9799.14 of Megan's Law IV, 42 Pa.C.S. § 9799.14, establishes a three-tier system for the classification of sexual offenders.

An offender's classification is determined with reference to enumerated offenses listed at Section 9799.14(b)-(d). An offender's classification affects the length of time the offender is required to register and the severity of punishment an offender may receive for failing to register or providing false registration information.

Tier I offenses include crimes such as unlawful restraint, false imprisonment, corruption of minors, video voyeurism, and indecent assault. 42 Pa.C.S. § 9799.14(b)(1)-(2), (6), (8), (11). Tier I offenders are required to register for a period of 15 years. Section 9799.15(a)(1) of Megan's Law IV, 42 Pa.C.S.

polino (December 3, 2012) at 1, Petition Ex. 1.) Under Megan's Law IV, Coppolino must register a wider array of information with the PSP, including aliases, nicknames, Internet identifiers under which he communicates or posts, date of birth, social security number, telephone number, passport, driver's license, professional licenses, and license plate or motor vehicle registration numbers. Section 9799.16(b) of Megan's Law IV, 42 Pa.C.S. § 9799.16(b). Coppolino must appear in person quarterly, rather than annually, to verify his registration information. Section 9799.15(e)(3) of Megan's Law IV, 42 Pa.C.S. § 9799.15(e)(3). In addition to being fingerprinted and photographed, Coppolino must also provide palm prints and DNA samples. Section 9799.16(c)(5)-(6) of Megan's Law IV, 42 Pa.C.S. § 9799.16(c)(5)-(6). Coppolino must appear in person at a registration site at least 21 days before traveling outside of the United States and provide information about the planned trip, including dates of travel, destinations, and temporary lodging. 42 Pa.C.S. § 9799.15(i). Finally, Coppolino must update changes in his registration information, including temporary lodging, cell phone numbers, and information relating to motor vehicles he owns or operates, in person at a registration site within three business days of any change or potentially face a five year prison sentence. 42 Pa. C.S. §§ 9799.15(g), 9799.21(a); 18 Pa.C.S. § 4915.1(c).

■ In response to Coppolino's Petition, the Commissioner filed preliminary objections in the nature of a demurrer, which this Court overruled by Opinion and Order dated July 22, 2013. *Coppolino v. Commissioner of the Pennsylvania State Police* (Pa.Cmwlth., No. 214 M.D.2013, filed July 22, 2013) (single judge op.) Coppolino filed his Motion for Summary Judg-

---

§ 9799.15(a)(1). A Tier I offender who fails to register may be guilty of a third-degree felony for a first offense. 18 Pa.C.S. § 4915.1(b)(1).

Tier II offenses include crimes such as statutory sexual assault, unlawful contact with a minor, sexual exploitation of children, and various offenses related to human trafficking. 42 Pa.C.S. § 9799.14(c)(1), (1.1), (2), (5)-(7). Tier II offenders are required to register for a period of 25 years. 42 Pa.C.S. § 9799.15(a)(2). A Tier II offender who fails to register may be guilty of a second-degree felony. 18 Pa.C.S. § 4915.1(c)(1).

Tier III offenses include crimes such as kidnapping, rape, involuntary deviate sexual intercourse, indecent assault of a minor under 13, and sexual abuse. 42 Pa.C.S. § 9799.14(d)(1)(2), (4), (8), (11). A Tier III offender is required to register for life. 42 Pa.C.S. § 9799.15(a)(3). A Tier III offender who fails to register may be guilty of a second-degree felony. 18 Pa.C.S. § 4915.1(c)(1). Coppolino is a Tier III offender based on his conviction for involuntary deviate sexual intercourse, per Section 9799.14(d)(4), 42 Pa. C.S. § 9799.14(d)(4).

In addition to the three-tier classification system, a sexual offender may also be classi-

fied as a Sexually Violent Predator (SVP) under Section 9799.24 of Megan's Law IV, 42 Pa.C.S. § 9799.24. A court must order, prior to sentencing, that an offender convicted of a Tier I, Tier II, or Tier III offense be assessed by the Sexual Offenders Assessment Board (the Board). *Id.* Upon such an order, a member of the Board assesses the offender's crime based on the facts of the offense, the offender's prior history, characteristics of the offender (such as age, mental illness, or drug abuse), and other factors relating to the risk of re-offense. 42 Pa.C.S. § 9799.24(b). This assessment is then forwarded to the district attorney, who determines whether to request a hearing. 42 Pa.C.S. § 9799.24(d), (e)(1). At the hearing, the Commonwealth bears the burden of proving by clear and convincing evidence that the offender is a SVP. 42 Pa. C.S. § 9799.24(e)(3). A SVP is required to undergo monthly counseling sessions and failure to do so constitutes a first-degree misdemeanor. 18 Pa.C.S. § 4915.1(c.3); 42 Pa. C.S. § 9799.36(a). In addition, a SVP is required to register for life. 42 Pa.C.S. § 9799.15(a)(6). Coppolino has not been classified as a SVP.

ment with this Court on February 21, 2014, averring that: (1) the changes to Megan's Law IV, described above, make the law so much more punitive than previous versions of Megan's Law as to render the statute an *ex post facto* law; and (2) Megan's Law IV is unconstitutionally overbroad because it burdens Coppolino's right to anonymous online speech while his offense did not involve a minor or the Internet. On March 20, 2014, the Commission-

er filed his Cross–Motion for Summary Judgment alleging that he is entitled to summary relief because the provisions of Megan's Law IV are not punitive, applying Megan's Law IV does not violate Coppolino's due process and equal protection rights, and Megan's Law IV is applicable to Coppolino, thereby requiring him to register as a sex offender regardless of whether he never failed to register under Megan's Law III.[8, 9, 10]

8. We treat the parties' cross-motions for summary judgment, pursuant to Rule 1035.2 of the Pennsylvania Rules of Civil Procedure, Pa. R.C.P. No. 1035.2, as cross-applications for summary relief pursuant to Rule 1532(b) of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 1532(b). *A.S. v. Pennsylvania State Police*, 87 A.3d 914, 915 & n. 2 (Pa. Cmwlth.2014). Rule 1532(b) provides that, "[a]t any time after the filing of a petition for review in an appellate or original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear." Pa. R.A.P. 1532(b).

9. Coppolino does not address in his Motion for Summary Judgment whether the language of Megan's Law IV classifies Coppolino as an individual required to register. However, in his Petition he alleged that Section 9799.13(3), which (at the time the Petition was filed) required individuals to register if they were "required to register and failed to register with the Pennsylvania State Police under this subchapter prior to the effective date of this section." Section 5 of the Act of July 5, 2012, P.L. 880, *formerly* 42 Pa.C.S. § 9799.13(3). Coppolino averred that he never failed to register and, therefore, was not required to register. (Petition ¶ 9.) The Commissioner is correct that under the current amendments to Megan's Law IV, Coppolino is required to register as an individual who was "required to register with the Pennsylvania State Police pursuant to this subchapter prior to December 20, 2012, and who had not fulfilled the individual's period of registration as of December 20, 2012...." 42 Pa.C.S. § 9799.13(3). There is no dispute that Coppolino was designated a lifetime registrant under Megan's Law III and, therefore, had not fulfilled his period of registration as of December 20, 2012. Regardless of the merits of Coppolino's argument with regard to the

original language of Megan's Law IV, under the new language of Section 9799.13(3), the Commissioner is correct that because Coppolino had not fulfilled his registration period as of December 20, 2012, he is required to register under Megan's Law IV. Therefore, we shall grant summary relief to the Commissioner on this issue.

10. We note that, after argument was held in this matter on June 18, 2014, the Commissioner submitted a Post–Submission Notice of Recent Opinion on July 14, 2014, and a Second Post–Submission Notice of a Second Recent Opinion on July 29, 2014, bringing to this Court's attention decisions of the Superior Court in *Commonwealth v. Perez*, 97 A.3d 747 (Pa.Super.2014) and *Commonwealth v. McDonough*, 96 A.3d 1067 (Pa.Super.2014). Coppolino has not filed a response to either notice. Rule 2501(a) of the Pennsylvania Rules of Appellate Procedure provides that "[a]fter the argument of a case has been concluded ... no brief, memorandum or letter relating to the case shall be presented or submitted ... to the court or any judge thereof, except upon application or when expressly allowed at bar at the time of argument." Pa. R.A.P. 2501(a). Rule 2501(b) provides an exception to this general rule for changes in the authority of cases cited in a party's brief. Pa. R.A.P. 2501(b). Neither *Perez* nor *McDonough* was cited in either party's brief, and neither case directly affects the authority of any of the cases cited in the parties' brief. Therefore, the proper course would have been for the Commissioner to apply for leave to submit its notices. However, we are grateful for the Commissioner's diligence in apprising this Court of new developments in the law surrounding this important matter, and we have taken these decisions into consideration in disposing of this matter.

■ Initially, we note that Coppolino's Petition seeks mandamus relief. With regard to mandamus, the Supreme Court has explained that:

The writ of mandamus exists to compel official performance of a ministerial act or mandatory duty. *See Delaware River Port Auth. v. Thornburgh*, 508 Pa. 11, 493 A.2d 1351, 1355 (1985). Mandamus cannot issue "to compel performance of a discretionary act or to govern the manner of performing [the] required act." *Volunteer Firemen's Relief Ass'n of City of Reading v. Minehart*, 415 Pa. 305, 203 A.2d 476, 479 (1964). This Court may issue a writ of mandamus where the petitioners have a clear legal right, the responding public official has a corresponding duty, and no other adequate and appropriate remedy at law exists. *Id.; see Board of Revision of Taxes v. City of Philadelphia*, 607 Pa. 104, 4 A.3d 610, 627 (2010). Moreover, mandamus is proper to compel the performance of official duties whose scope is defined as a result of the mandamus action litigation. *Thornburgh*, 493 A.2d at 1355. Thus, "we have held that mandamus will lie to compel action by an official where his refusal to act in the requested way stems from his erroneous interpretation of the law." *Minehart*, 203 A.2d at 479–80.

*Fagan v. Smith*, 615 Pa. 87, 41 A.3d 816, 818 (2012) (second alteration in original). With these principles in mind, we turn to the arguments raised by the parties in their cross-motions for summary relief.

## II. Ex Post Facto

Coppolino argues that the registration and notification provisions of Megan's Law IV are more punitive than those of previous versions of Megan's Law to such an extent that Megan's Law IV constitutes an impermissible *ex post facto* law as to Coppolino, where he completed his sentence prior to the enactment of these new provisions. The Commissioner, in turn, relying on decisions of the Pennsylvania courts holding the registration requirements of previous versions of Megan's Law to be non-punitive, argues that the provisions of Megan's Law IV do not implicate the *ex post facto* clauses of the United States and Pennsylvania Constitutions.

■ Both the United States and Pennsylvania Constitutions prohibit *ex post facto* laws. U.S. Const. Art. I § 10 (stating that "[n]o State shall ... pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts ..."); Pa. Const. art. I, § 17 (stating that "[n]o *ex post facto* law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed"). These prohibitions on *ex post facto* laws in the United States and Pennsylvania Constitutions are subject to the same analytical framework. *Commonwealth v. Allshouse*, 614 Pa. 229, 36 A.3d 163, 184 (2012). A law violates these prohibitions if, *inter alia*, it "changes the punishment, and inflicts a greater punishment than the law annexed to the crime when committed." *Id.* In determining whether a law inflicts punishment, Pennsylvania courts apply a two-prong analysis articulated by the United States Supreme Court in *Smith v. Doe*, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003). *Lehman v. Pennsylvania State Police*, 576 Pa. 365, 839 A.2d 265, 271 (2003). The first prong of this test requires examination of whether the General Assembly's intent was punitive. *Id.* If the intent was punitive, the statute constitutes punishment. If the intent is civil and non-punitive the second prong of the test applies, which requires examining "whether the statute is 'so punitive either in purpose or effect as to negate [Congress's] intention to deem it civil.' " *Id.* (quoting *Smith*,

538 U.S. at 92, 123 S.Ct. 1140) (alteration in original). In making this determination, the United States Supreme Court has supplied seven factors (referred to as the *Mendoza–Martinez* factors):

1) whether the sanction involves an affirmative disability or restraint; 2) whether it has historically been regarded as a punishment; 3) whether it comes into play only on a finding of *scienter* [11]; 4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; 5) whether the behavior to which it applies is already a crime; 6) whether the alternative purpose to which it may rationally be connected is assignable for it; and 7) whether it appears excessive in relation to the alternative purpose assigned.

*Lehman*, 839 A.2d at 271 (citing *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963)) (italics in original). In balancing these factors, some carry more weight than others. For instance, in *Smith*, the United States Supreme Court held that the third and fifth factors—whether the sanctions required a finding of scienter and whether the behavior to which the sanctions apply is already a crime—were "of little weight" because "[t]he regulatory scheme applies only to past conduct, which was, and is, a crime. This is a necessary beginning point, for recidivism is the statutory concern." *Smith*, 538 U.S. at 105, 123 S.Ct. 1140.[12] The sixth factor—a sanction's connection to a legitimate, non-punitive purpose, is one of the most important considerations. *Id.; Commonwealth v. Williams*, 574 Pa. 487, 832 A.2d 962, 979 (2003).

 In approaching this question, we, like the Superior Court, in a concurring opinion in *Commonwealth v. Perez*, 97 A.3d 747 (Pa.Super.2014):

do not question the legislature's wisdom in enacting [Megan's Law IV] or the breadth of its provisions. Our focus is the timing of the application of its provisions. Specifically, the task before this Court is to decide whether the statute crosses the line from a permissibly retroactive non-punitive regulatory scheme, into an impermissibly punitive *ex post facto* law.

*Id.* at 760 (Donohue, J., concurring).

### A. Legislative Intent

 Applying the two-prong test of *Smith*, we first look to whether the asserted purpose of Megan's Law IV is punitive. In *Commonwealth v. Gaffney*, 557 Pa. 327, 733 A.2d 616 (1999)[13] and *Williams*, 574

---

11. Black's Law Dictionary defines "scienter" in relevant part as "[a] degree of knowledge that makes a person legally responsible for the consequences of his or her act or omission; the fact of an act's having been done knowingly, esp. as a ground for civil damages or criminal punishment." Black's Law Dictionary 1347 (7th ed.1999).

12. *But see Smith*, 538 U.S. at 113, 123 S.Ct. 1140 ("In my opinion, a sanction that (1) is imposed on everyone who commits a criminal offense, (2) is not imposed on anyone else, and (3) severely impairs a person's liberty is punishment.") (Stevens, J., dissenting).

13. Because *Gaffney* pre-dated *Smith*, in which the United States Supreme Court reiterated its traditional two-prong test, the Pennsylvania Supreme Court, in analyzing whether the registration requirements of Megan's Law I constituted an *ex post facto* law, looked to the *ex post facto* test articulated by the Third Circuit Court of Appeals in *Artway v. Attorney General of New Jersey*, 81 F.3d 1235 (3d Cir. 1996), and *E.B. v. Verniero*, 119 F.3d 1077 (3d Cir.1997). In determining whether a statute with a non-punitive intent actually had a punitive effect, the *Artway/Verniero* test relied upon factors similar, but not identical to the *Mendoza–Martinez* factors, specifically:

(A) "proportionality—whether the remedial purpose of [the measure] ... can explain all the adverse effects on those involved," (B) whether the measure has been historically

Pa. 487, 832 A.2d 962, the Pennsylvania Supreme Court considered *ex post facto* challenges to Megan's Law I and Megan's Law II, respectively. In these cases, the Supreme Court looked to the stated legislative intent in determining whether the statutes were intended to be punitive. Both cases dealt with the same statutory language:

> "It is hereby declared to be the intention of the General Assembly to protect the safety and general welfare of the people of this Commonwealth by providing for registration and community notification regarding sexually violent predators who are about to be released from custody and will live in or near their neighborhood. It is further declared to be the policy of this Commonwealth to require the exchange of relevant information about sexually violent predators among public agencies and officials and to authorize the release of necessary and relevant information about sexually violent predators to members of the general public as a means of assuring public protection and shall not be construed as punitive."

*Gaffney*, 733 A.2d at 619 (quoting Section 9791(b) of Megan's Law I, 42 Pa.C.S. § 9791(b) (expired December 20, 2012)); *Williams*, 832 A.2d at 971–72 (stating that the statutory language at issue was identical to that in *Gaffney* ). Relying solely on this statutory language the Supreme Court, in both cases, determined that the General Assembly's purpose in enacting the respective statutes was not retribution, but to protect public safety.

In this case, Section 9799.10 of Megan's Law IV generally provides that the purpose of the law is to comply with the federal Adam Walsh Child Protection and Safety Act of 2006, to require sexual offenders to register with the PSP, and to provide certain information about them to the public through a website. 42 Pa.C.S. § 9799.10. Megan's Law IV's declaration of policy states that the law's ·purpose is public protection:

> (1) It is the intention of the General Assembly to substantially comply with the Adam Walsh Child Protection and Safety Act of 2006 and to further protect the safety and general welfare of the citizens of this Commonwealth by providing for increased regulation of sexual offenders, specifically as that regulation relates to registration of sexual offenders and community notification about sexual offenders.

> (2) It is the policy of the Commonwealth to require the exchange of relevant information about sexual offenders among public agencies and officials and to authorize the release of necessary and relevant information about sexual offenders to members of the general public as a means of assuring public protection and shall not be construed as punitive.

Section 9799.11(b)(1)-(2) of Megan's Law IV, 42 Pa.C.S. § 9799.11(b)(1)-(2). This stated intent is expressly non-punitive and is substantially similar (albeit not identical) to the statutory language considered in *Gaffney* and *Williams*.

---

considered punishment, and (C) whether the measure serves both a remedial and a deterrent purpose. If question (C) is answered in the affirmative, then a measure will be considered punitive if: (a) the "deterrent purpose is an unnecessary complement to the measure's salutary operation," (b) "the measure is operating in an unusual manner inconsistent with its historically mixed purposes," or (c) "the deterrent purpose overwhelms the salutary purpose." *Gaffney*, 733 A.2d at 619–20 (quoting *Commonwealth v. Gaffney*, 702 A.2d 565, 567 (Pa.Super.1997), *aff'd*, 557 Pa. 327, 733 A.2d 616 (1999)) (alteration and omission in original).

Although the Pennsylvania Supreme Court in *Gaffney* and *Williams* looked only to the statutes' stated legislative intent, the United States Supreme Court, in *Smith*, stated that the punitive intent behind a legislative enactment could also be discerned from other formal attributes, "such as the manner of its codification or the enforcement procedures it establishes." *Smith*, 538 U.S. at 94, 123 S.Ct. 1140. The statute is codified within the Sentencing Code, 42 Pa.C.S. §§ 9701–9799.41, which generally provides procedures and guidelines for criminal sentencing. However, in *Smith*, the United States Supreme Court gave similar factors little weight, stating "[t]he location and labels of a statutory provision do not by themselves transform a civil remedy into a criminal one." *Smith*, 538 U.S. at 94, 123 S.Ct. 1140. The General Assembly provided that most of the enforcement of Megan's Law IV is to be undertaken by the PSP. Section 9799.32 of Megan's Law IV, 42 Pa.C.S. § 9799.32 (setting forth the duties of the PSP under Megan's Law IV). However, the PSP not only enforces criminal statutes, but also enforces traffic laws and other safety regimes, such as background checks under the Pennsylvania Uniform Firearms Act of 1995 (Firearms Act), 18 Pa.C.S. §§ 6101–6127. *See* Section 6111.1 of the Firearms Act, 18 Pa.C.S. § 6111.1 (setting forth the duties of the PSP under the Firearms Act).[14] Thus, neither of these attributes requires the conclusion that the General Assembly intended Megan's Law IV to be punitive.

### B. Punitive Purpose or Effect

Next, this Court must look to the second prong of the *Smith* test, "whether the statute is 'so punitive either in purpose or effect as to negate [the General Assembly's] intention to deem it civil.'" *Lehman*, 839 A.2d at 271 (quoting *Smith*, 538 U.S. at 92, 123 S.Ct. 1140). As discussed above, the Pennsylvania Supreme Court has applied the *Mendoza–Martinez* factors in considering *ex post facto* challenges to previous versions of Megan's Law.

In *Gaffney*, the Pennsylvania Supreme Court considered provisions of Megan's Law I requiring a sexual offender to register his address with the PSP for a period of 10 years, verify that address annually, and immediately report any change in address.[15] *Gaffney*, 733 A.2d at 617. The Supreme Court concluded that the regis-

---

14. We note, however, that Judge Donohue, in her concurring opinion in *Perez*, found the question of whether the intent of Megan's Law IV was punitive to be much closer, stating that previous versions of Megan's Law made a clear distinction between SVPs and sexual offenders, while Megan's Law IV largely eliminated the distinction by, for example, imposing lifetime registration on both SVPs and Tier III offenders. *Perez*, 97 A.3d at 750–51 (Donohue, J., concurring). Likewise, Judge Donohue questioned the placement of Megan's Law IV in the Sentencing Code and the requirement of Section 9799.23(a)(5), 42 Pa.C.S. § 9799.23(a)(5), that the registration and notification requirements of Megan's Law IV be explained to a registrant at criminal sentencing. *Perez*, 97 A.3d at 751.

15. For reasons unrelated to the registration requirements, the Pennsylvania Supreme Court held Megan's Law I to be unconstitutional in *Commonwealth v. Donald Williams*, 557 Pa. 285, 733 A.2d 593 (1999). Under Megan's Law I, an individual convicted of certain enumerated offenses was presumed to be a SVP and bore the burden of proving otherwise by clear and convincing evidence. *Id.* at 594, 597. Under Megan's Law I, the effect of being designated a SVP included enhanced criminal penalties for subsequent offenses. *Id.* at 601. Due to this enhancement of criminal sentencing, the Supreme Court held that the SVP provision at issue in *Donald Williams* was punitive. *Id.* at 601–02. Therefore, the Supreme Court held that it was unconstitutional to place the burden on an individual to prove that he was not a SVP. *Id.* at 607–08.

tration requirements of Megan's Law I were not punitive and, thus, did not constitute an *ex post facto* law. *Id.* at 621.

In *Williams,* the Pennsylvania Supreme Court considered requirements in Megan's Law II that all registrants must:

> (1) register his current residence or intended residence with the state police upon release from incarceration, parole from a correctional institution, or commencement of an intermediate punishment or probation; (2) inform the state police within ten days of a change of residence; and (3) register within ten days with a new law enforcement agency after establishing residence in another state.

*Williams,* 832 A.2d at 967. In addition, an individual judged a SVP [16] was also required to submit to fingerprinting and photographing and to appear in person, quarterly, to verify his address. *Id.* at 967–68. Police were to notify neighbors, day care centers, and school officials in the SVP's municipality of the SVP's name, address, and offense, and also provide a photograph. *Id.* Applying the *Mendoza–Martinez* factors, the Supreme Court concluded that these requirements were not punitive. *Id.* at 984.

Thus, in applying the *Mendoza–Martinez* factors, we must be cognizant that the Pennsylvania Supreme Court, in *Williams,* found provisions similar, but not identical, to the provisions of Megan's Law IV to be non-punitive. We are, of course, bound by that decision. Coppolino recognizes that in his Motion for Summary Judgment, but argues that differences in Megan's Law IV from the versions previously considered go so far as to render the provisions of the current statute punitive. Specifically, Coppolino argues that under Megan's Law IV he: (1) is required to appear quarterly rather than annually to verify his registration information, per Section 9799.15(e)(3); [17] (2) must disclose much more information than under previous versions of Megan's Law, including aliases and nicknames, Internet identifiers under which he communicates or posts, date of birth, social security number, telephone number, passport, driver's license, professional licenses, and license plate or motor vehicle registration numbers, per Section 9799.16(b); [18] (3) must provide palm prints and DNA samples, in addition

---

**16.** In *Williams,* the issue before the Court was the Commonwealth's burden of proof in showing that an individual was a SVP. Megan's Law II provided that the burden of proof was clear and convincing evidence. *Williams,* 832 A.2d at 968. If the Court concluded that the registration and notification provisions amounted to punishment, then proof beyond a reasonable doubt would have been required to impose such conditions. *Id.* at 968–69.

**17.** Section 9799.15(e)(3) provides that a registrant "shall appear in person at an approved registration site to provide or verify the information set forth in section 9799.16(b) (relating to registry) and to be photographed as follows: . . . . (3) An individual convicted of a Tier III sexual offense shall appear quarterly." 42 Pa.C.S. § 9799.15(e)(3).

**18.** Section 9799.16(b) requires that a registrant:

> shall provide the following information which shall be included in the registry:
> (1) Primary or given name, including an alias used by the individual, nickname, pseudonym, ethnic or tribal name, regardless of the context used and any designations or monikers used for self-identification in Internet communications or postings.
> (2) Designation used by the individual for purposes of routing or self-identification in Internet communications or postings.
> (3) Telephone number, including cell phone number, and any other designation used by the individual for purposes of routing or self-identification in telephonic communications.
> (4) Valid Social Security number issued to the individual by the Federal Government and purported Social Security number.

to the fingerprints previously required, per Section 9799.16(c)(5)-(6); [19] (4) must appear in person at a registration site at least 21 days before traveling outside the

(5) Address of each residence or intended residence, whether or not the residence or intended residence is located within this Commonwealth and the location at which the individual receives mail, including a post office box. If the individual fails to maintain a residence and is therefore a transient, the individual shall provide information for the registry as set forth in paragraph (6).

(6) If the individual is a transient, the individual shall provide information about the transient's temporary habitat or other temporary place of abode or dwelling, including, but not limited to, a homeless shelter or park. In addition, the transient shall provide a list of places the transient eats, frequents and engages in leisure activities and any planned destinations, including those outside this Commonwealth. If the transient changes or adds to the places listed under this paragraph during a monthly period, the transient shall list these when registering as a transient during the next monthly period. In addition, the transient shall provide the place the transient receives mail, including a post office box. If the transient has been designated as a sexually violent predator, the transient shall state whether he is in compliance with section 9799.36 (relating to counseling of sexually violent predators). The duty to provide the information set forth in this paragraph shall apply until the transient establishes a residence. In the event a transient establishes a residence, the requirements of section 9799.15(e) (relating to period of registration) shall apply.

(7) Temporary lodging. In order to fulfill the requirements of this paragraph, the individual must provide the specific length of time and the dates during which the individual will be temporarily lodged.

(8) A passport and documents establishing immigration status, which shall be copied in a digitized format for inclusion in the registry.

(9) Name and address where the individual is employed or will be employed. In order to fulfill the requirements of this paragraph, if the individual is not employed in a fixed workplace, the individual shall provide information regarding general travel routes and general areas where the individual works.

(10) Information relating to occupational and professional licensing, including type of license held and the license number.

(11) Name and address where the individual is a student or will be a student.

(12) Information relating to motor vehicles owned or operated by the individual, including watercraft and aircraft. In order to fulfill the requirements of this paragraph, the individual shall provide a description of each motor vehicle, watercraft or aircraft. The individual shall provide a license plate number, registration number or other identification number and the address of the place where a vehicle is stored. In addition, the individual shall provide the individual's license to operate a motor vehicle or other identification card issued by the Commonwealth, another jurisdiction or a foreign country so that the Pennsylvania State Police can fulfill its responsibilities under subsection (c)(7).

(13) Actual date of birth and purported date of birth.

(14) Form signed by the individual acknowledging the individual's obligations under this subchapter provided in accordance with section 9799.23 (relating to court notification and classification requirements).

42 Pa.C.S. § 9799.16(b).

19. Section 9799.16(c)(5)-(6) provides:

The Pennsylvania State Police shall ensure that the following information is included in or electronically accessible by the registry:

. . . .

(5) Set of fingerprints and palm prints of the individual. In order to fulfill the requirements of this paragraph, the palm prints shall be taken for the purpose of submission to the Federal Bureau of Investigation Central Database. The palm prints shall be submitted for entry into the database.

(6) DNA sample of the individual. In order to fulfill the requirements of this paragraph, the sample shall be taken for the purpose of analysis and entry into the Combined DNA Index System (CODIS). In addition, the sample shall be analyzed and submitted for entry into CODIS.

42 Pa.C.S. § 9799.16(c)(5)-(6).

United States and provide information about the planned trip, including dates of travel, destinations, and temporary lodging, per Section 9799.15(i); [20] and (5) must update changes in his registration information, including temporary lodging, cell phone number, and information relating to motor vehicles owned or operated, in person at a registration site within three business days or potentially face a five year prison sentence, per Sections 9799.15(g) [21] and 9799.21(a)(3) [22] of Megan's Law IV, Section 4915.1(a.1)(3), (c) of the Crimes Code,[23] and Section 9718.4(a)(1)(iv) of the Sentencing Code.[24]

Therefore, we will apply the *Mendoza–Martinez* factors only to these aspects of Megan's Law IV, which are different from the elements determined by the Supreme Court in *Williams* to be non-punitive, to determine whether they are punitive in their ultimate effect.

### 1. Quarterly Verification

■ We first address the requirement of Section 9799.15(e)(3) that registrants appear quarterly, rather than annually, to verify their registration information. The first *Mendoza–Martinez* factor is "[w]hether the sanction involves an affir-

20. Section 9799.15(i) provides that a registrant: "shall appear in person at an approved registration site no less than 21 days in advance of traveling outside of the United States. The individual shall provide the following information: (1) Dates of travel, including date of return to the United States. (2) Destinations. (3) Temporary lodging." 42 Pa.C.S. § 9799.15(i).

21. Section 9799.15(g) requires that a registrant:

shall appear in person at an approved registration site within three business days to provide current information relating to:

(1) A change in name, including an alias.

(2) A commencement of residence, change in residence, termination of residence or failure to maintain a residence, thus making the individual a transient.

(3) Commencement of employment, a change in the location or entity in which the individual is employed or a termination of employment.

(4) Initial enrollment as a student, a change in enrollment as a student or termination as a student.

(5) An addition and a change in telephone number, including a cell phone number, or a termination of telephone number, including a cell phone number.

(6) An addition, a change in and termination of a motor vehicle owned or operated, including watercraft or aircraft. In order to fulfill the requirements of this paragraph, the individual must provide any license plate numbers and registration numbers and other identifiers and an addi-

tion to or change in the address of the place the vehicle is stored.

(7) A commencement of temporary lodging, a change in temporary lodging or a termination of temporary lodging. In order to fulfill the requirements of this paragraph, the individual must provide the specific length of time and the dates during which the individual will be temporarily lodged.

(8) An addition, change in or termination of e-mail address, instant message address or any other designations used in internet communications or postings.

An addition, change in or termination of information related to occupational and professional licensing, including type of license held and license number.
42 Pa.C.S. § 9799.15(g).

22. Section 9799.21(a)(3) provides that a registrant may be subject to prosecution under Section 4915.1 of the Crimes Code if he fails to provide accurate information as required by Section 9799.15. 42 Pa.C.S. § 9799.21(a)(3).

23. Section 4915.1(a)(3) provides that it is a crime to fail to provide accurate information as required by Section 9799.15; Section 4915.1(c) provides that a lifetime registrant who violates Section 4915.1(a)(3) commits a first-degree felony. 18 Pa.C.S. § 4915.1.

24. Section 9718.4(a)(1)(iv) provides for a minimum sentence of five years' imprisonment for a lifetime registrant who is convicted of violating Section 4915.1(a)(3).

mative disability or restraint." *Mendoza–Martinez*, 372 U.S. at 168, 83 S.Ct. 554. In *Smith*, the United States Supreme Court held that if the disability or restraint imposed by a sanction "is minor and indirect, its effects are unlikely to be punitive." *Smith*, 538 U.S. at 100, 123 S.Ct. 1140. The Supreme Court noted that physical restraint was the "paradigmatic affirmative disability or restraint" and also compared the obligations of Alaska's Megan's Law to penalties such as occupational debarment, which it noted had been upheld as non-punitive. *Id.* In *Lehman*, the Pennsylvania Supreme Court held that a prohibition against purchasing or possessing firearms was an affirmative disability. *Lehman*, 839 A.2d at 272. In *Williams*, the Pennsylvania Supreme Court held that the registration requirements of Megan's Law II did not impose an affirmative disability or restraint on registrants, but left them free to live as they choose. *Williams*, 832 A.2d at 973–75. Similarly in this case, the requirement that Coppolino appear in person to verify certain information quarterly leaves Coppolino free to live as he chooses and does not prevent him from engaging in any activity.

The second *Mendoza–Martinez* factor is whether the sanction in question "has historically been regarded as a punishment." *Mendoza–Martinez*, 372 U.S. at 168, 83 S.Ct. 554. In *Williams*, the Pennsylvania Supreme Court considered whether the community notification provisions of Megan's Law II were analogous to colonial era punishments, such as public shaming, humiliation, and banishment. *Williams*, 832 A.2d at 975–76. The Supreme Court concluded that they were not, because any stigmatization that occurred was a necessary result of effectuating the statute's remedial purpose rather than the intended result of the notification provisions. *Id.* at 976–77. The Court also considered wheth-

er the requirement that SVPs undergo counseling was akin to the counseling sometimes required as a condition of probation or parole and concluded that even though counseling might be associated with probation and parole, its purpose was rehabilitative, not punitive. *Id.* at 977.

The requirement that Coppolino appear in person quarterly to verify his information might be seen as analogous to the requirements that a probationer or parolee regularly contact his probation or parole officer and supply him with information. For instance, akin to the quarterly verification required by Section 9799.15(e)(3), the regulations of the Pennsylvania Board of Probation and Parole (Parole Board) require that a parolee "[m]aintain regular contact with the parole supervision staff by ... [r]eporting regularly as instructed." 37 Pa.Code § 63.4(3)(i). The Superior Court, in *Perez*, considered whether the registration requirements of Megan's Law IV were akin to probation or parole. *Perez*, 97 A.3d at 753–54. The Superior Court concluded that the requirements were not analogous because a registrant under Megan's Law IV must report changes to registration information but, unlike a probationer or parolee, is not required to seek permission to, for instance, change jobs or move. *Id.* at 754 (citing *Smith*, 538 U.S. at 101–02, 123 S.Ct. 1140).

In a concurring opinion, Judge Donohue stated that it was important that, under the quarterly verification requirement, a registrant must not only verify his information, but must do so in person. *Id.* at 752 (Donohue, J., concurring). Reasoning that this requirement "greatly resembles the periodic meetings with probation officers imposed on probationers," Judge Donohue would have held that due to the in-person reporting requirements of Section 9799.15(e)(3) and (g), along with the plethora of information required by Section

9799.16(b), these provisions of Megan's Law IV do, in fact, closely resemble the supervision afforded individuals on probation or parole:

> Like the conditions imposed on probationers, registrants under [Megan's Law IV] must notify the state police of a change in residency or employment.... Offenders also face incarceration for any non-compliance with the registration requirements.... Furthermore, [Megan's Law IV] requires registrants who do not have a fixed work place to provide "general travel routes and general areas where the individual works" in order to be in compliance.... The Supreme Court in *Smith* stated that "[a] sex offender who fails to comply with the reporting requirement may be subjected to criminal prosecution for that failure, but any prosecution is a proceeding separate from the individual's original offense." *Smith*, 538 U.S. at 101–02, 123 S.Ct. 1140. However, violations for non-compliance with both probation and [Megan's Law IV] registration requirements are procedurally parallel. Both require factual findings to determine whether a violation has actually occurred.... Similarly, but for the original underlying offense, neither would be subject to the mandatory conditions from which the potential violation stems.

*Id.* at 764 (internal citations omitted). We find this rationale convincing and determine that this second factor weighs in favor of a finding that the quarterly verification provision is punitive.

The third *Mendoza–Martinez* factor is whether the sanction in question "comes into play only on a finding of scienter." *Mendoza–Martinez*, 372 U.S. at 168, 83 S.Ct. 554. In *Williams*, the Pennsylvania Supreme Court held that this factor weighed against a finding that Megan's Law II was punitive. *Williams*, 832 A.2d at 977–78. The Supreme Court acknowledged that many of the predicate offenses that triggered an assessment of whether an individual was a SVP (and thus subject to the sanctions at issue) involved elements of scienter. *Id.* at 977. However, the Supreme Court held that some predicate offenses could be committed without scienter. *Id.*

> For example, a defendant who creates a visual record or depiction of sexual acts by a minor child can be convicted of sexual abuse of children pursuant to Section 6312(b) of the Crimes Code, *see* 18 Pa.[ ]C.S. § 6312(b), even where he has a good faith belief that the child is over eighteen years of age.

*Id.* Similar provisions are predicate offenses under Megan's Law IV.[25] This factor, therefore, weighs in favor of a deter-

---

**25.** The example given by the Pennsylvania Supreme Court in *Williams*, creating a visual record or depiction of sexual acts by a minor in violation of Section 6312(b), is also a Tier II predicate offense under Megan's Law IV. 42 Pa.C.S. § 9799.14(c)(4). We note, however, that even this offense requires a finding of scienter, albeit not with regard to all facets of the crime. While an individual's knowledge regarding the age of the child is irrelevant, the offense still requires knowing conduct with regard to other elements:

> (1) Any person who causes or *knowingly* permits a child under the age of 18 years to engage in a prohibited sexual act or in the simulation of such act commits an offense if such person *knows, has reason to know or intends* that such act may be photographed, videotaped, depicted on computer or filmed.
>
> Any person who *knowingly* photographs, videotapes, depicts on computer or films a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such an act commits an offense.

18 Pa.C.S. § 6312(b) (emphasis added). We are, however, bound to follow the Supreme Court's precedent.

mination that the quarterly verification requirement is not punitive.

The fourth *Mendoza–Martinez* factor is whether the operation of the sanction in question "will promote the traditional aims of punishment—retribution and deterrence." *Mendoza–Martinez*, 372 U.S. at 168, 83 S.Ct. 554. The Pennsylvania Supreme Court in *Williams* concluded that, given the substantial penalties for predicate offenses to Megan's Law II, it was unlikely that the additional registration and notification requirements would be intended to serve a deterrent effect. *Williams*, 832 A.2d at 978. Noting that the primary purpose of the registration and notification requirements was to protect prospective victims, the Supreme Court held that this outweighed any possible retributory effect. *Id.* In *Smith*, the United States Supreme Court pointed out that the mere presence of a deterrent element to a sanction is not dispositive of this factor. "Any number of governmental programs might deter crime without imposing punishment. 'To hold that the mere presence of a deterrent purpose renders such sanctions "criminal" ... would severely undermine the Government's ability to engage in effective regulation.'" *Smith*, 538 U.S. at 102, 123 S.Ct. 1140

(quoting *Hudson v. United States*, 522 U.S. 93, 105, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997)) (omission in original).

Likewise, in this case, the qualification that triggers registration under Megan's Law IV is, in every case, a criminal offense. Thus, the rationale of the Pennsylvania Supreme Court in *Williams*, that the additional strictures of Megan's Law are not likely to deter crime more than the criminal sentences for the predicate crimes in question, would appear to be applicable.[26] Therefore, this factor cannot weigh in favor of finding that the quarterly verification provision is punitive.

The fifth *Mendoza–Martinez* factor is whether the behavior to which the sanction in question applies is already a crime. *Mendoza–Martinez*, 372 U.S. at 168, 83 S.Ct. 554. In *Williams*, the Pennsylvania Supreme Court held that because the determination that an individual was an SVP, and thus subject to lifetime registration, was not based upon only the commission of a crime, but upon a determination that the individual suffered from a·mental abnormality or personality disorder, this factor was not met. *Williams*, 832 A.2d at 978–79. In this case, by contrast, the only trigger for the provisions Coppolino complains of is, as noted above, conviction for a

**26.** However, it should be noted that, in some cases, an individual may be sentenced only to probation for a predicate offense and then be subject to the stigma attendant to registration under Megan's Law IV for many years, or even for life. We are cognizant that the impacts of being listed as a sex offender are not negligible. The United States Court of Appeals for the Third Circuit recognized some of these consequences in *E.B. v. Verniero*, 119 F.3d 1077 (3d Cir.1997), specifically with respect to New Jersey's Megan's Law, but the consequences could similarly apply to Pennsylvania's Megan's Law:

> registrants and their families have experienced profound humiliation and isolation as a result of the reaction of those notified. Employment and employment opportunities

have been jeopardized or lost. Housing and housing opportunities have suffered a similar fate. Family and other personal relationships have been destroyed or severely strained. Retribution has been visited by private, unlawful violence and threats and, while such incidents of "vigilante justice" are not common, they happen with sufficient frequency and publicity that registrants justifiably live in fear of them. It also must be noted that these indirect effects are not short lived.

*Id.* at 1102. Many of these consequences appear to be a result of public notification provisions, which have not significantly changed since the Pennsylvania Supreme Court considered Megan's Law II in *Williams*.

qualifying predicate offense. The requirement that a registrant verify information in person quarterly applies to any Tier III offender. 42 Pa.C.S. § 9799.15(e)(3). A Tier III offender is an individual who has been convicted of one or more certain enumerated criminal offenses, or of two or more offenses enumerated as Tier I or Tier II offenses. *See* 42 Pa.C.S. § 9799.14(d) (setting forth the bases on which an individual will be classified a Tier III offender). Unlike in *Williams,* no additional assessment or determination is required before an individual is subject to the sanctions complained of by Coppolino. Therefore, this factor weighs in favor of a finding that the quarterly verification provision is punitive.

The sixth *Mendoza–Martinez* factor is "whether an alternative purpose to which [the sanction] may rationally be connected is assignable for it." *Mendoza–Martinez,* 372 U.S. at 168, 83 S.Ct. 554. A law's "'rational connection to a non[-]punitive purpose is a "[m]ost significant" factor in our determination that the statute's effects are not punitive.'" *Williams,* 832 A.2d at 979 (quoting *Smith,* 538 U.S. at 102, 123 S.Ct. 1140 (quoting *United States v. Ursery,* 518 U.S. 267, 290, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996)) (second alteration in original)). The Pennsylvania Supreme Court in *Williams* found a strong, nonpunitive public safety purpose in the registration and notification requirements to Megan's Law II, stating:

> Here, the legislative findings "are consistent with grave concerns over the high rate of recidivism among convicted sex offenders." ... [W]hile anyone may take certain steps to avoid victimization by a sex offender, reason dictates that awareness that a particular sexual predator lives near a home or school frequented by children will make a practical difference in avoiding predation.

*Id.* at 979 (citations omitted) (quoting *Smith,* 538 U.S. at 103, 123 S.Ct. 1140). Here, similar legislative concerns underlie Megan's Law IV. In enacting Megan's Law IV, the General Assembly determined that sex offenders pose a high risk of recidivism and "protection of the public from this type of offender is a paramount governmental interest." 42 Pa.C.S. § 9799.11(a)(4). The General Assembly determined that "[r]elease of information about sexual offenders to public agencies and the general public will further the governmental interests of public safety and public scrutiny of the criminal and mental health systems so long as the information released is rationally related to the furtherance of those goals." 42 Pa.C.S. § 9799.11(a)(6).

The requirement of Section 9799.15(e)(3) that Tier III offenders update their registration information and be photographed quarterly can be rationally connected to the purpose of public safety; this provision ensures that the information regarding individuals convicted of more serious crimes will be kept most up to date. Therefore, this factor weighs in favor of a finding that the quarterly verification requirement is not punitive.

The seventh and last *Mendoza–Martinez* factor is whether the sanction at issue "appears excessive in relation to the alternative purpose assigned." *Mendoza–Martinez,* 372 U.S. at 168, 83 S.Ct. 554. In *Williams,* the Pennsylvania Supreme Court recognized that there is little case law to assist in the evaluation of this factor, with the line between proportionate and disproportionate sanctions lying "'somewhere between imprisonment and revocation of citizenship on the one hand, and loss of a profession or benefits on the other.'" *Williams,* 832 A.2d at 981 (quoting *Artway v. Attorney General of New*

*Jersey*, 81 F.3d 1235, 1266 (3d Cir.1996)). The Supreme Court went on to note that, in order to be disproportionate, "the effects of a measure must be 'extremely onerous' to constitute punishment, as even the deprivation of one's livelihood does not qualify." *Id.* at 982 (quoting *E.B. v. Verniero*, 119 F.3d 1077, 1101 (3d Cir.1997)). Given that the Supreme Court in *Williams* held that quarterly verification for SVPs and the registration and notification provisions of Megan's Law II were not disproportionate to the public safety purpose they served, the incrementally greater requirements of Megan's Law IV, including quarterly verification, is likewise not disproportionate to the purpose of ensuring public safety.

Finally, we must balance the seven *Mendoza–Martinez* factors to determine whether the quarterly verification requirement is punitive. In doing so, we are mindful that some factors, such as a sanction's connection to a legitimate, non-punitive purpose, carry greater weight, while others, such as the requirement of scienter and whether the behavior to which a sanction applies is already a crime, carry less weight. *Smith*, 538 U.S. at 102, 105, 123 S.Ct. 1140; *Williams*, 832 A.2d at 979. Keeping such principles in mind, we conclude that the quarterly verification requirement of Section 9799.15(e)(3) is not punitive. This provision imposes no affirmative disability or restraint and has little, if any, deterrent effect. This provision may bear some resemblance to the requirements of probation or parole; however, and most importantly, it is rationally connected to the purpose of public safety and is not disproportionate to that purpose. That this sanction is applicable to behavior that is already a crime and applicable based on a finding of scienter is of little weight given the nature and purpose of the regulatory scheme underpinning Megan's Law IV. Therefore, we hold that this provision is not punitive under the two-prong *Smith* test.

### 2. Expanded Disclosure

▪ We next address whether Section 9799.16(b), which requires registrants to disclose much more information than under previous versions of Megan's Law, is punitive.[27] As with quarterly verification, the expanded disclosure requirement does not prevent or restrain registrants from engaging in any activity and, as with the previous provision, the expanded disclosure requirements may be seen as somewhat similar to the reporting requirements imposed on an individual on probation or parole. Considerations regarding the third, fourth and fifth *Mendoza–Martinez* factors—whether a finding of scienter is required, whether the sanction promotes retribution and deterrence, and whether the behavior to which the sanction applies is already a crime—are essentially identical to those discussed in the previous section. The expanded disclosure requirement of Section 9799.16(b) applies to any individual subject to registration. 42 Pa. C.S. § 9799.16(b). The main criterion triggering applicability of Megan's Law IV to an individual is conviction for a "sexually violent offense."[28] *See generally* 42 Pa.

**27.** As noted above, the additional information registrants are required to provide includes aliases and nicknames, Internet identifiers under which a registrant communicates or posts, date of birth, social security number, telephone number, passport, driver's license, professional licenses, and license plate or motor vehicle registration numbers. 42 Pa.C.S. § 9799.16(b)

**28.** The term "sexually violent offense" may be somewhat confusing in this context because not all individuals who commit a sexually violent offense are SVPs. Section 9799.12 defines a SVP as an individual who commits

C.S. § 9799.13 (setting forth individuals who must register). Megan's Law IV defines a "sexually violent offense" as an offense defined as a Tier I, Tier II, or Tier III criminal offense. 42 Pa.C.S. § 9799.12. Thus, the expanded disclosure requirement, along with the other provisions yet to be discussed, will always be predicated upon conviction for a crime, but the Pennsylvania Supreme Court has held that not all of these crimes involve a scienter element.

With regard to the sixth *Mendoza–Martinez* factor, the expanded disclosure requirement of Section 9799.16(b) can be rationally connected to the purpose of maintaining public safety by sharing information with government agencies. It is conceivable that these provisions give the agencies with which the information is shared, including the PSP, local jurisdiction, law enforcement bodies, and probation and parole officials,[29] the ability to address the risk of recidivism by having a store of information with which to investigate future offenses committed by registrants, or to observe suspicious patterns of behavior that might precede a new offense. With regard to the seventh *Mendoza–Martinez* factor, the requirement for expanded disclosure is not disproportionate to this public safety purpose.

Balancing the *Mendoza–Martinez* factors, we hold that Section 9799.16(b) is not punitive. This provision imposes no affirmative disability or restraint and carries little, if any, deterrent effect. While the wide array of information required might bear some resemblance to the supervision of an individual on parole, the requirement can rationally be connected to the public

---

certain enumerated offenses or is determined by a court to be a SVP "due to a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses." 42 Pa.C.S. § 9799.12. On the other hand, the term "sexually violent offense" encompasses a somewhat broader list of enumerated offenses. *Id.*

29. Section 9799.18(a) of Megan's Law IV sets forth the entities with which registration information is to be shared:

(a) General rule.—The Pennsylvania State Police shall, within three business days, make available information provided by an individual set forth in section 9799.13 (relating to applicability) under sections 9799.15(g) and (i) (relating to period of registration), 9799.16(b) (relating to registry) and 9799.19 (relating to initial registration) to:

(1) A jurisdiction in which the individual is required to register the individual's residence, employment or enrollment as a student.

(2) A jurisdiction in which the individual has terminated the individual's residence, employment or enrollment as a student.

(3) The United States Attorney General, the Department of Justice and the United States Marshals Service for inclusion in the National Sex Offender Registry, NCIC and any other database established by such Federal agencies.

(4) The district attorney of the county in which the individual:

(i) establishes a residence or terminates a residence, or is transient;

(ii) commences employment or terminates employment; or

(iii) enrolls as a student or terminates enrollment as a student.

(5) The chief law enforcement officer of the police department of the municipality in which the individual:

(i) establishes a residence or terminates a residence, or is transient;

(ii) commences employment or terminates employment; or

(iii) enrolls as a student or terminates enrollment as a student.

(6) The county office of probation and parole for the county in which the individual:

(i) establishes a residence or terminates a residence, or is transient;

(ii) commences employment or terminates employment; or

(iii) enrolls as a student or terminates enrollment as a student.

42 Pa.C.S. § 9799.18(a).

safety purpose of Megan's Law IV and is not disproportionate to that purpose. Therefore, we hold, pursuant to the two-prong *Smith* test, that this provision is not punitive.

### 3. Palm Prints and DNA Samples

■ We next address the requirement of Section 9799.16(c)(5) and (6) that a registrant provide, in addition to the fingerprints required under previous versions of Megan's Law, palm prints and a DNA sample. As with the previous provisions, this requirement imposes no disability or restraint. Moreover, unlike the previous provisions, this requirement does not resemble any traditional punishment. Because it is a new technology, it would be very difficult to show that DNA sampling has "traditionally" been considered punitive. However, both it and the provision of palm prints may be viewed as analogous to fingerprinting because they allow trace evidence to be connected to an identifiable individual. *See Maryland v. King,* ——— U.S. ———, ——————, ———, 133 S.Ct. 1958, 186 L.Ed.2d 1 (2013) (discussing DNA sampling as analogous to fingerprinting in considering whether DNA samples may be taken from individuals validly arrested for serious crimes). Fingerprinting has not traditionally been regarded as punishment:

> fingerprinting is not a punishment. It is a means of identification which is useful in many circumstances some of which relate to the enforcement of our laws. Unless the burdens that this procedure places on the individual are unreasonable, therefore, it will be upheld as one of those annoyances that must be suffered for the common good.... [F]ingerprinting is not a punishment but a procedure, the purpose of which is to facilitate law enforcement.

*United States v. Krapf,* 285 F.2d 647, 650–51 (3d Cir.1960). Thus, the second *Men-doza–Martinez* factor militates against finding that the requirement that registrants provide a DNA sample and palm prints is punitive.

With regard to the sixth *Mendoza–Martinez* factor, the requirement that a registrant provide DNA prints and palm prints can be rationally connected to the purpose of public safety. Such information may enable law enforcement agencies to more efficiently investigate offenses by implicating or ruling out registered individuals. Given the similarity of this information to fingerprinting, which is already required, it does not appear that this provision is disproportionate to its public safety purpose.

Balancing these factors, we note that none of the *Mendoza–Martinez* factors strongly mitigates in favor of a finding that this provision is punitive, and the most important factor, that the provision be rationally connected to its stated purpose of public safety, is met. Therefore, we conclude that this provision is non-punitive.

### 4. Foreign Travel Information

■ Next we address the requirement of Section 9799.15(i) that a registrant must provide the PSP with information regarding foreign travel at least 21 days in advance, including dates of travel, destinations, and temporary lodging. With regard to the first *Mendoza–Martinez* factor, this provision does not impose an affirmative restraint or disability. In *Williams,* the Pennsylvania Supreme Court held that the general registration obligations of Megan's Law II did not impose an affirmative restraint or disability because they did not prevent a registrant from engaging in any activity, but left them free to live as they chose, while reporting certain information to the PSP. *Williams,* 832 A.2d at 973–75. Similarly,

this provision does not prevent registrants from traveling outside of the country, but simply requires them to inform the PSP of their intent to do so. As with the expanded disclosure and quarterly verification requirements, this provision somewhat resembles the requirements placed on an individual on probation or parole. For example, a parolee may not leave his parole district without prior written permission. 37 Pa.Code § 63.4(1).

Most importantly, however, this provision can rationally be connected to Megan Law IV's stated purpose of public safety. It is again conceivable that knowledge of the location and travel of registered sexual offenders may aid law enforcement in preventing recidivism and investigating subsequent offenses. While this provision may be inconvenient, it is not disproportionate to this purpose. Therefore these factors, balanced together, mitigate in favor of a finding that this provision is not punitive.

### 5. In–Person Updates

■ Finally, we address the requirement of Section 9799.15(g) that a registrant must update changes in his registration information, including temporary lodging, cell phone number, and information relating to motor vehicles owned or operated, in person at a registration site within three business days. Unlike the previous provisions, this requirement imposes an affirmative disability or restraint on registrants by inhibiting their ability to travel freely. Megan's Law IV requires registrants such as Coppolino to register with the PSP a plethora of information, including "temporary lodging," along with "the specific length of time and the dates during which the individual will be tempo-

rarily lodged," and "[a]n addition, a change in and termination of a motor vehicle owned or operated." 42 Pa.C.S. § 9799.16(b)(6)-(7). Megan's Law IV does not state any minimum time for which a registrant must occupy temporary lodging or operate a motor vehicle before registration of such information is required. Thus, this requirement may apply even to temporary lodging occupied for a single night, such as a hotel room, or a motor vehicle operated for any length of time, such as a rental car. Section 9799.15(g)(6)-(7) requires that a registrant "appear *in person* at an approved registration site within *three business days*" to update any changes to, *inter alia,* temporary lodging, including the duration of the stay, or change in motor vehicle operated. 42 Pa.C.S. § 9799.15(g) (emphasis added). Thus, a traveling registrant is required to notify the PSP of where he will be staying when he travels and what vehicle he will be operating. If, for instance, a hotel at which the registrant was planning to stay was full and the registrant was forced to lodge in another location, he would have three days to return to Pennsylvania and report the change in person or risk a five year prison sentence. It is unclear how a registrant traveling to another city would be able to register, prior to renting a car there, the vehicle's "license plate number[ ] and registration number[ ] and other identifier[ ]." 42 Pa.C.S. § 9799.15(g)(6). If the registrant were unable to determine such information in advance, he would have to return within three business days to report the information in person. Depending on where and how the registrant is traveling, such return might be impossible.[30] Failure to comply with this require-

---

**30.** Section 9799.25(e) of Megan's Law IV provides that "[t]he occurrence of a natural disaster or other event requiring evacuation of residences shall not relieve the sexual offend-

er of the duty to register *or any other duty imposed by this subchapter."* 42 Pa.C.S. § 9799.25(e) (emphasis added). Thus, a registrant prevented by a natural disaster or oth-

ment for a lifetime registrant such as Coppolino constitutes a first-degree felony for a first offense. Section 4915.1(a)(3), (c)(3) of the Crimes Code, 18 Pa.C.S. § 4915.1(a)(3), (c)(3).[31] Therefore, the ability of registrants to travel is significantly limited, if not essentially curtailed, by the requirement for in-person updates set forth in Section 9799.15(g), and this requirement imposes an affirmative restraint.

As with previous provisions, this provision, in and of itself, resembles the supervision accorded to individuals on probation and parole. For example, a parolee must "[n]otif[y] the parole supervision staff within 72 hours of a change in status including, but not limited to employment, on the job training and education." 37 Pa. Code § 63.4(3)(iii). Notably, this parole provision is less strict than the in-person updating requirement at issue because it covers less information and a parolee does not have to appear in person to update this information. Moreover, insofar as it restricts travel, the Megan's Law provision is more severe than parole—while parolees may receive permission to travel, 37 Pa. Code § 63.4(1), this requirement renders travel for a registrant wholly infeasible. Further, freedom of movement within the United States has traditionally been regarded as a basic right of citizens. *Stottlemyer v. Stottlemyer*, 458 Pa. 503, 329 A.2d 892, 894 (1974). By impairing this right,

this provision imposes an affirmative restraint.

It is conceivable that this requirement may be connected to the purpose of public safety. For instance, by requiring registrants to update their information in person, Megan's Law IV ensures that, at that time, the PSP will know the individual's whereabouts and have an opportunity to assess his demeanor and question him regarding the veracity of the information he is providing. However, given the substantial restraint or disability this provision imposes on registrants, we do not believe that this provision is proportionate to the public purpose it serves.[32] On balance, this disproportionality, along with the similarity to the traditional punishment of parole and the substantial infringement of a fundamental right, we conclude that this provision is punitive. As such, applying this provision to an individual convicted under a prior version of Megan's Law would violate the constitutional prohibition against *ex post facto* laws.

### C. Remedy

While we recognize that in enacting Megan's Law IV the General Assembly is attempting to achieve the laudable goal of protecting the public and reducing sexual offenses, where Constitutional rights are violated the courts have no choice but to remedy such violations. Having determined that one of the challenged provisions is punitive and, thus,

---

er event from returning to Pennsylvania within three business days would still be culpable for failing to comply with Section 9799.15(g).

**31.** Section 4915.1(a)(3) of the Crimes Code provides that it is a criminal offense for a registrant to "fail[] to ... provide accurate information when registering under Section 9799.15"; Section 4915.1(c)(3) grades this offense as a first-degree felony. 18 Pa.C.S. § 4915.1(a)(3), (c)(3).

**32.** In *Williams,* the Pennsylvania Supreme Court considered penalties only applicable to SVPs, who were designated SVPs on the basis of an *additional* judicial assessment or determination. Unlike such SVPs, under Megan's Law IV there is no individualized determination that a given registrant poses any particular risk of violence or recidivism before the provisions at issue in this case are applicable. Thus, the proportionality of a sanction to a given individual's threat to public safety appears more attenuated.

constitutes an *ex post facto* law, we must determine a remedy. Coppolino asks this Court to declare that Megan's Law IV is, in its entirety, unconstitutional as to individuals like him who completed their criminal sentences prior to the statute's effective date. However, as discussed above, most of the provisions of Megan's Law IV are substantially the same as those held not to be *ex post facto* by the Pennsylvania Supreme Court in *Williams*, and our analysis has revealed only one provision we believe to be so punitive as to constitute an *ex post facto* law. Generally, "individual provisions of all statutes are presumptively severable" even where the statute includes no severability provision. *Williams*, 832 A.2d at 986 (citing Section 1925 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1925). "Severance is precluded only where, after the void provisions are excised, the remainder of the statute is incapable of execution in accordance with legislative intent." *Id.* "Furthermore, the fact that an unconstitutional provision is found within an otherwise valid section does not preclude its severance." *Id.*

The punitive requirement that updating of certain information be done in person may be severed from the remainder of Megan's Law IV. The clause at issue states:

> (g) In-person appearance to update information.—In addition to the periodic in-person appearance required in subsections (e), (f) and (h), an individual specified in section 9799.13 shall appear in person at an approved registration site within three business days to provide current information relating to . . . .

42 Pa.C.S. § 9799.15(g). The only part of this provision that this Court holds to be unconstitutionally punitive with regard to individuals convicted prior to the enactment of the provision, is the requirement

that such updates be made in person. The requirement that registrants promptly update the PSP with current information legitimately serves the statute's purpose of promoting public safety. We may preserve these otherwise valid provisions by striking, with regard to individuals convicted prior to the enactment of the provision, "appear in person at an approved registration site . . . to" from subsection (g) as follows:

> ~~In-person appearance~~ to update information.—In addition to the periodic in-person appearance required in subsections (e), (f) and (h), an individual specified in section 9799.13 shall ~~appear in person at an approved registration site~~ within three business days to provide current information relating to . . . .

*Id.* After this excision, the remainder of Megan's Law IV is capable of execution in accordance with the legislative intent of registering, monitoring, and disseminating information regarding sexual offenders. Therefore, this provision may be severed with regard to individuals convicted prior to the enactment of the provision while the remainder of the statutory scheme will be preserved.

### III. Overbreadth

Next, we address Coppolino's argument that the requirement of Section 9799.16(b)(1) that he disclose "any designations or monikers used for self-identification in Internet communications or postings" is overbroad as applied to him because this provision is intended to protect minors from online predation and his offense did not involve the Internet or a minor. 42 Pa.C.S. § 9799.16(b)(1). The Commissioner argues that Coppolino failed to raise this issue in his Petition and, therefore, it is waived.

 We must first address the Commissioner's argument that Coppolino

waived this issue. This matter is in our Court's original jurisdiction. This Court has held in original jurisdiction cases that failure to raise an issue in a petition for review or to amend the petition to review to include that issue results in waiver. *Pennsylvania Medical Providers Association v. Foster,* 149 Pa.Cmwlth. 203, 613 A.2d 51, 53 n. 3 (1992).[33] In his Petition, Coppolino alleged that:

> application of [Megan's Law IV] to his case violates his constitutional rights to due process and equal protection in that he has never been convicted of any offense involving a minor (the complainant in this case was age 31 years) whereas these statutes were designed to require supervision of defendants who were convicted of sexual misconduct involving children.

(Petition ¶ 10.) The Commissioner made a preliminary objection that this allegation was not sufficiently specific. (Preliminary Objections ¶¶ III(1)-(2).) This Court held that Coppolino's allegation was sufficiently specific to survive preliminary objections, stating:

> [i]n determining whether a pleading is sufficiently specific, this Court will look to "whether the facts alleged are sufficiently specific to enable a defendant to prepare his defense." *Unified Sportsmen of Pennsylvania v. Pennsylvania Game Commission,* 950 A.2d 1120, 1134 (Pa.Cmwlth.2008). In the context of [Paragraph 10 of Coppolino's Petition], it

is clear that Coppolino's due process/equal protection argument is that Megan's Law IV is overbroad. *See, e.g., Pennsylvania Medical Society v. Foster* [147 Pa.Cmwlth. 528], 608 A.2d 633, 636 (Pa.Cmwlth.1992) (stating that overbroad statutes may violate substantive due process).

*Coppolino,* slip op. at 7. The Commissioner argues that Coppolino's allegation in his Petition raised, at most, the argument that Megan's Law IV is overbroad as to Coppolino because his victim was not a minor, and that it does not raise the argument that the statute is overbroad because Coppolino's offense did not involve the Internet. However, these are not, in fact, separate arguments. Coppolino argues that the requirement that he disclose his Internet identifiers is overbroad regarding him because this provision is designed to protect minors from online predation and his offense did not involve minors or the Internet. This overbreadth argument involves elements with regard to both minors and the Internet. We believe that it fairly falls within the admittedly broad ambit of the allegation in Coppolino's Petition and, thus, we hold that it is not waived.[34]

We now turn to the merits of Coppolino's overbreadth argument. "A challenge to the constitutionality of a statute under the 'overbreadth doctrine' is generally limited to the First Amendment."[35] *Commonwealth v. Davidson,*

---

**33.** However, Rule 1517 of the Pennsylvania Rules of Appellate Procedure provides that, with regard to the practice and procedure on petitions in this Court's original jurisdiction, "practice shall be in accordance with the appropriate Pennsylvania Rules of Civil Procedure, so far as they may be applied." Pa. R.A.P. 1517. Rule 1033 of the Pennsylvania Rules of Civil Procedure provides that a party, by leave of court, "may at any time change the form of action ... or otherwise amend the pleading." Pa. R.C.P. No. 1033.

**34.** We note that this holding in no way prejudices the Commissioner because he addressed Coppolino's argument in this regard fully in his Cross–Motion for Summary Judgment and Memorandum of Law in support thereof.

**35.** The First Amendment of the United States Constitution provides, *inter alia,* that "Congress shall make no law ... abridging the freedom of speech." U.S. Const. amend. I. The First Amendment is applicable to States through operation of the Fourteenth Amend-

595 Pa. 1, 938 A.2d 198, 208 (2007). Under the overbreadth doctrine, "statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society." *Broadrick v. Oklahoma*, 413 U.S. 601, 611–12, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). "Litigants ... are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Id.* at 612, 93 S.Ct. 2908.

> [I]n determining whether a statute is unconstitutional due to overbreadth, a "court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Commonwealth v. Ickes*, 582 Pa. 561, 873 A.2d 698, 702 (2005) (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982)). The "overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick*, 413 U.S. at 615, 93 S.Ct. 2908....

*Davidson*, 938 A.2d at 208. Thus, in determining whether Megan's Law IV is overbroad, we must look to whether the provision at issue substantially burdens constitutionally protected speech.

■ Here, Coppolino argues that his right to freely express himself anonymously on the Internet is chilled or burdened by the requirement that he disclose his Internet identifiers. *See Melvin v. Doe*,

575 Pa. 264, 836 A.2d 42, 47–49 (2003) (stating that First Amendment protects anonymous speech, although States have interests in protecting against evils such as libel and fraud); *see generally Reno v. American Civil Liberties Union*, 521 U.S. 844, 874–79, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997) (applying an overbreadth analysis to a prohibition of certain online communications of sexually explicit material). Coppolino argues that, as a member of a widely despised group, sexual offenders, anonymous speech allows Coppolino his only opportunity to speak out regarding matters of public importance, such as the treatment of sexual offenders. The question of whether the disclosure of Internet identifiers in the context of sexual offender registration impinges on the right to free anonymous speech has not been previously addressed in Pennsylvania; however, it has been addressed in other jurisdictions.

Some of these courts have held that similar provisions were overbroad. In *Doe v. Nebraska*, 898 F.Supp.2d 1086, 1120 (D.Neb.2012), the United States District Court for the District of Nebraska considered statutes that, *inter alia*, required sex offenders to register "remote communication device identifiers, addresses, domain names, and Internet and blog sites used." *Id.* at 1093. The court held that requiring registrants to disclose their Internet identifiers was unconstitutionally overbroad because it was intertwined with the requirement that registrants consent to the search and monitoring of their computers. *Id.* at 1120. The statute provided that, by disclosing their Internet identifiers, registrants had to sign forms consenting to the search of their computers or electronic communications devices. *Id.* at 1120 n. 38 (citing Neb.Rev.Stat. § 29–4006(2)).

---

ment. *Fink v. Board of Education of Warren County School District*, 65 Pa.Cmwlth. 320,

442 A.2d 837, 840 (1982).

Thus, any offender who does so much as send an e-mail message to his member of Congress is faced with the real possibility that the police will come into his home without a warrant to search his computer.... Many a rational offender will give up a computer and the ability to express himself on the Internet to remain secure in his home.

*Id.* at 1120. The court held that the statute impermissibly chilled free speech because it forced registrants to choose between their First Amendment right to free speech and their Fourth Amendment right to be free from unreasonable searches. *Id.* Therefore, the court held that the statute was overbroad in this regard. *Id.* at 1120, 1122.

In *White v. Baker*, 696 F.Supp.2d 1289, 1310 (N.D.Ga.2010), the United States District Court for the Northern District of Georgia considered a provision requiring registered sexual offenders to "provide to law enforcement officials their 'E-mail addresses, usernames, and user passwords.'" *Id.* at 1295 (quoting Ga.Code Ann. § 42–1–12(a)(16)(K)). White, the plaintiff in that case, argued that such disclosure deprived him of his right to anonymous speech and was overbroad. *Id.* at 1300. In analyzing White's claim that the disclosure of his Internet identifiers chilled his right to engage in anonymous speech on the Internet, the court focused on the uses of registrants' Internet identifiers permitted by the statute. *Id.* at 1308–09. The Court held that mere disclosure of Internet identifiers to law enforcement officials, such as a county sheriff, did not inhibit speech. *Id.* at 1309. The statute at issue provided that registrants' Internet identifiers were to "be treated as private data" except that they could "be disclosed to law enforcement agencies for law enforcement purposes" and to "government agencies conducting confidential background checks." Ga.Code Ann. § 42–1–12(*o*)(1)–(2). Im-

portantly, this provision also contained an exception stating that law enforcement officials "shall ... release such other relevant information collected under this Code section that is necessary to protect the public concerning sexual offenders." Ga. Code Ann. § 42–1–12(*o*)(3). The court held that the Internet identifiers registrants were required to disclose, including passwords and information for forums, such as blogs, in which protected political speech might occur, were broader than necessary to prevent predation of minors. *White*, 696 F.Supp.2d at 1310–11. Likewise, the court noted that the information to be disclosed included usernames and passwords that might be used for exclusively commercial transactions such as banking. *Id.* at 1310.

The court also held that the potential uses for a registrants' Internet identifiers was too broad. It noted that "law enforcement purposes," as defined in the statute, was not defined and could potentially be very broad. *Id.* The court found most troubling the provision in subsection (*o*)(3) that allowed for disclosure of registrants' information, including Internet identifiers, "to protect the public." *Id.* at 1311. The court perceived a great risk that law enforcement officials might disclose Internet identifiers to the public in order to allow the public to, itself, monitor registrants' online speech. *Id.* The court saw this as an obvious chilling effect on anonymous online speech. *Id.* Therefore, due to the wide array of Internet identifiers to be disclosed, and the potential for public disclosure of such identifiers, the court held that the statute was unconstitutionally overbroad in this regard. *Id.* at 1311.

By contrast, other courts have held that such provisions are not overbroad. In *Doe v. Shurtleff*, 628 F.3d 1217 (10th Cir.2010), the Tenth Circuit Court of Appeals consid-

ered a Utah statute that required sex offenders living in Utah to register their Internet identifiers, including " 'any electronic mail, chat, instant messenger, social networking, or similar name used for Internet communication.' " *Id.* at 1221 & n. 1 (quoting Utah Code Ann. § 77–27–21.5(1)(j) (West 2008)). In that case, statutory provisions specifically provided that such Internet identifiers were to be used for criminal investigations and were to be considered private information not to be disclosed to the public. *Id.* at 1221. Utah's Government Records Access and Management Act (GRAMA) provided that such private information could "only be disclosed in limited circumstances such as when requested by the subject of the record, or pursuant to a court order or legislative subpoena." *Id.* at 1221 & n. 4 (citing Utah Code Ann. § 63G–2–201(5), 302(1)(m)). Doe argued that the possibility of public disclosure of his Internet identifiers chilled his right to anonymous speech. Examining the provisions of the GRAMA the court determined that, although Doe's Internet identifiers could be shared with law enforcement agencies to assist in the investigation of crimes, such sharing did not extend to disclosure to the general public. *Id.* at 1224–25. The court held that Doe's right to free, anonymous speech was not infringed upon simply because the government might pierce his anonymity *after* he engaged in such speech: " 'Speech is chilled when an individual whose speech relies on anonymity is forced to reveal his identity as a *pre-condition* to expression.' " *Id.* at 1225 (quoting *Peterson v. National Telecommunications and Information Administration,* 478 F.3d 626, 632 (4th Cir.2007)) (emphasis added). Therefore, the court held that the provision requiring Doe to register his Internet identifiers did not infringe on Doe's right to anonymous speech. *Id.*

In *Harris v. State,* 985 N.E.2d 767 (Ind. App.2013), the Indiana Court of Appeals considered a challenge to, *inter alia,* the requirement that registrants disclose " '[ a] ny electronic mail address, instant messaging username, electronic chat room username, or social networking web site username that the ... offender uses or intends to use.' " *Id.* at 775 (quoting Ind. Code § 11–8–8–8(a)(7) (2014)). Harris characterized himself as a political activist opposed to sex offender registration and stated that, due to business and safety concerns, he wished to speak about such issues anonymously online. *Id.* Harris argued that Section 11–8–8–8(a)(7) infringed on his right to anonymous speech. *Id.* Citing *Shurtleff,* the court concluded that the statute did not infringe on Harris's right to anonymous speech because he was not required "to reveal his identity as a prerequisite for expression." *Id.* at 776.

Considering these cases together, the determining factor is whether a given statute permits or makes likely disclosure of a registrant's Internet identifiers to the public. *Shurtleff,* 628 F.3d at 1224–25; *White,* 696 F.Supp.2d at 1309–10. Section 9799.16(b)(1)-(2) of Megan's Law IV requires that registrants provide, along with their names and aliases, "any designations or monikers used for self-identification in Internet communications or postings," and any "[d]esignation used by the individual for purposes of routing or self-identification in Internet communications or postings." 42 Pa.C.S. § 9799.16(b)(1)-(2). This information is to be included in a "Statewide registry of sexual offenders," which must "[b]e composed of an electronic database and digitized records," be able to communicate with national sex offender databases maintained by the United States Department of Justice, and be able to communicate with other jurisdictions' sexual offender registries. 42 Pa.C.S. § 9799.16(a)(1)-(3).

Megan's Law IV provides four main avenues for dissemination of registry information: (1) information sharing between law enforcement agencies; (2) victim notification; (3) community notification; and (4) a public website. None of these methods of dissemination authorize public disclosure of a registrant's Internet identifiers.

Section 9799.18(a) provides that the PSP shall provide registry information regarding a registrant, including Internet identifiers, to other states in which the registrant lives, works, or attends school; the federal government; and certain law enforcement officials. 42 Pa.C.S. § 9799.18(a). This provision does not authorize further dissemination by these persons and entities and does not provide for dissemination to the general public.

Sections 9799.26 and 9799.27 provide for dissemination of certain registry information to SVPs' victims and to certain community members in which SVPs reside. 42 Pa.C.S. §§ 9799.26–.27. These provisions apply only to SVPs and, thus, are not applicable in the current case. Moreover, in neither case are Internet identifiers included in the information authorized to be disclosed.

■ Section 9799.28(a) (1)(i) of Megan's Law IV requires the PSP to develop and maintain a website allowing the public "to obtain relevant information for an individual convicted of a sexually violent of-fense...." 42 Pa.C.S. § 9799.28(a)(1)(i). The PSP must include certain information on the website [36] and must not include other information.[37] Registrants' Internet identifiers are not included in either list. Because Section 9799.28(b) sets forth the information that must appear on the website, we interpret [38] this provision as narrowing the scope of what information is "relevant" under Section 9799.28(a)(1)(i), 42 Pa.C.S. § 9799.28(a)(1)(i), and thus to be included on the website. Because Section 9799.28(b) does not include Internet identifiers as information that must be included on the website, we do not believe the PSP has the authority to disclose this information to the public through the website.

Because none of the avenues of dissemination of registry information applicable in this case involve disclosure of registrants' Internet identifiers, we conclude that, as in *Shurtleff,* the requirement that registrants disclose their Internet identifiers does not burden the right to anonymous speech. Because this provision does not burden a registrant's First Amendment rights, it is not overbroad.

### IV. Conclusion

For the reasons stated above, we will grant Coppolino's Motion for Summary Judgment only in part and direct the Commissioner not to require Coppolino to

**36.** Section 9799.28(b)(1)-(14) requires the PSP to include registrants' names and aliases, birth years, home addresses, school addresses, work addresses, photographs, physical descriptions, vehicle license plate numbers, predicate convictions, and other information. 42 Pa.C.S. § 9799.28(b)(1)-(14).

**37.** Section 9799.28(c)(1)-(4) provides that the PSP may not include on the website registrants' social security numbers, travel and immigration document numbers, arrests not leading to conviction, and the identity of any victim. 42 Pa.C.S. § 9799.28(c)(1)-(4).

**38.** "It has long been a tenet of First Amendment law that in determining a facial challenge to a statute, if it be 'readily susceptible' to a narrowing construction that would make it constitutional, it will be upheld." *Virginia v. American Booksellers Association, Inc.,* 484 U.S. 383, 397, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988). "The key to application of this principle is that the statute must be 'readily susceptible' to the limitation; we will not rewrite a state law to conform it to constitutional requirements." *Id.*

make the updates required by Section 9799.15(g) in person. We shall deny Coppolino's Motion for Summary Judgment in all other respects. Insofar as we hold that the bulk of Megan's Law IV does not constitute an *ex post facto* law and is not overbroad with regard to the requirement that registrants disclose their Internet identifiers to the PSP, we shall grant the Commissioner's Cross–Motion for Summary Judgment in part and deny it in part.

Judge McCULLOUGH concurs in the result only.

### ORDER

**NOW**, October 14, 2014, the Motion for Summary Judgment of Richard Coppolino (Coppolino) is hereby **GRANTED, IN PART**, and the relief sought in Coppolino's Petition for Review in the Nature of a Petition for a Writ of Mandamus is granted in part; the Commissioner of the Pennsylvania State Police, Frank Noonan (Commissioner) is hereby directed not to require Coppolino, in making the updates required by Section 9799.15(g) of the Sentencing Code, 42 Pa.C.S. § 9799.15(g), to "appear in person at an approved registration site," consistent with this opinion. Coppolino's Motion for Summary Judgment is hereby **DENIED** in all other respects. Correspondingly, the Cross Motion for Summary Judgment of the Commissioner is hereby **GRANTED, IN PART**, and **DENIED, IN PART**, in accordance with the foregoing opinion.

The Chief Clerk is directed to enter judgment in accordance with this Order.