NEALON, J.,
Defendant, who was sentenced for indecent assault of a twelve-year old girl in 2004 and required to register and report as a sexual offender for a period of ten years under the then-existing version of Megan’s Law, has challenged the retroactive application of the Sexual Offender Registration and Notification Act (SORNA), 42 Pa.C.S. §§ 9799.10-9799.41, which became effective on December 20, 2012, and now imposes a lifetime obligation upon defendant to report in-person at an approved registration site four *97 times per year, in addition to ad hoc appearances to update information as changes occur and to disclose international travel plans. Defendant contends that: (1) by utilizing his guilty plea date as the commencement period for his registration responsibilities, he should be regarded as having completed his ten-year registration requirement prior to the effective date of SORNA; and (2) even if SORNA is applicable, it violates the ex post facto clauses of the United States and Pennsylvania Constitutions which prohibit the retroactive application of a law that imposes greater punishment than the law annexed to the crime when it was committed.
The plain language of SORNA clearly states that it applies to any person who was required to register as a sexual offender prior to SORNA’s effective date of December 20,2012, but had not fulfilled those registration responsibilities by that date. Since defendant was granted parole on October 14,2003, and first registered as a sexual offender on that date, he had not completed his ten-year registration requirement prior to SORNA’s effective date of December 20, 2012. Consequently, he is subject to the registration and verification provisions of SORNA.
Although the ex post facto clauses of the federal and state constitutions prohibit laws which inflict greater punishment than the law that was in effect when the crime was committed, they do not bar the retroactive application of a non-punitive regulatory scheme. The general assembly’s subjective purpose in enacting SORNA was to create a civil regulatory scheme, rather than a criminal penalty. Furthermore, based upon the relevant factors articulated by the United States and Pennsylvania Supreme Courts, SORNA is not so punitive in its purpose or effect as to negate the general assembly’s stated intent to deem it *98 civil. Accordingly, defendant has not established that the retroactive application of SORNA violates the federal or state ex post facto clauses, and his petition to reassess or reclassify his registration period will, therefore, be denied.
I. FACTUAL BACKGROUND
On October 7, 2002, defendant, Matthew Woodruff (“Woodruff’), pled guilty to one count of indecent assault, a misdemeanor of the first degree under 18 Pa.C.S. §§ 3126(a)(7) and (b)(3), for touching the vaginal area of a twelve year old minor when defendant was twenty years of age. (Transcript of Proceedings (“T. P.”) on 10/7/02, filed as docket entry no. 14, at pp. 6-13). In conjunction with his guilty plea, defendant submitted to a “Megan’s Law Colloquy,” which included his acknowledgment that he would “be required to register with the Pennsylvania State Police (“PSP”) for a period of at least ten (10) years from [his] release from incarceration.” (Id. at pp. 10-13; docket entry no. 16) (emphasis added). A pre-sentence investigation (PSI) was ordered, (T. P. 10/7/02 at pp. 9-10, 13), and in the interim, defendant was directed to undergo an assessment by the Pennsylvania Sexual Offender Assessment Board (SOAB) under the existing version of Megan’s Law, 42 Pa.C.S. §§ 9791 — 9799.9, which later expired on December 20, 2012, and was supplanted by SORNA. (Docket entry no. 15). On December 5, 2002, SOAB submitted its assessment which concluded that defendant was a “sexual offender,” but not a “sexually violent predator.” (T. P. 1/31/03 at pp. 2-5).
Based upon defendant’s prior record score of zero (0) and the offense gravity score of five (5) for his indecent assault charge, the recommended minimum sentence under the sentencing guidelines ranged from probation (restorative sanctions) to nine months incarceration. (Id. *99 at p. 12). On January 31, 2003, defendant was sentenced to be incarcerated for a minimum period of six months to a maximum period of eighteen months, to complete sexual offender counseling, to refrain from contact with the victim, to complete twenty-five hours of community service, and to comply with the registration requirements under Megan’s Law for a period of ten years. (Id. at pp. 12-15). On the date of his sentencing, defendant and his counsel executed a “Sexual Registration Notification Form” acknowledging his registration obligations under that law.[1] (Docket entry no. 23).
On February 10, 2003, defendant filed a “motion for reconsideration of sentence” in which he asserted that “the sentence of imprisonment” should be vacated since defendant (1) “has a severe handicap with complete loss of vision in his right eye and minimal vision in his left eye,” (2) comes from “a dysfunctional family with a father who is incarcerated in state prison and a mother he has not seen since September 2002,” and (3) did not use “any force or violence” in committing the offense. (Docket entry no. 24 at ¶4). Defendant’s motion for reconsideration was denied on February 11, 2003. (Docket entry no. 25). Upon the recommendation of the Lackawanna County *100 Adult Probation and Parole Department, and after being incarcerated for almost nine months, defendant was granted parole on October 14, 2003, and first registered with the Pennsylvania State Police as a sexual offender upon being released from prison on parole. (Docket entry no. 33). On September 14,2004, his parole was terminated through the expiration of his maximum sentence. (Docket entry no. 35).
More than ten years after the expiration of his sentence, defendant filed the instant “petition to reassess or reclassify period of registration under PA. Registration of Sexual Offender’s Act” on November 25, 2014. (Docket entry no. 38). Defendant avers in his petition, and the Commonwealth admits in its response to defendant’s petition, that under the registration requirements “in effect at the time of his conviction, [defendant] was required to register for a period of 10 years.” (Id. at ¶ 4; docket entry no. 41 at ¶4). Defendant and the Commonwealth further agree that as of December 20, 2012, defendant “was not incarcerated, under probation or parole supervision or any type of supervision for a sexually violent offense,” but that “[s]ometime after January 3, 2013, [he] received a letter from the Pennsylvania State Police that his sexual offender classification was now a Tier 3 and [that] he was now required to register for life.” (Id. at ¶¶5-6). Noting that he “does not reside in Pennsylvania, has no intent to relocate and is totally disabled as a result of being blind,” defendant requests in his petition that the court “reassess or reclassify his period of registration from lifetime registration to 10-year registration.”[2] (Id. at ¶¶ 7, 9).
*101 In opposing defendant’s request, the Commonwealth submits that although the defendant was subject to a ten-year registration at the time of his sentence, SORNA became effective on December 20,2012, while “defendant was still subject to the original registration requirements.” (Docket entry no. 41 at pp. 1, 3). The Commonwealth maintains that “persons required to register under SORNA include those who were required to register before December 20, 2012 who have not completed their registration obligation.” {Id. at p. 3). Since defendant was still obligated to register as a sexual offender as of December 20, 2012, the Commonwealth posits that there is no legal basis for granting defendant’s requested relief. {Id. at pp. 8-9).
In reply, defendant counters that by “using his plea date as the date of conviction rather than the sentence date, [defendant] had completed his 10-year period of registration before the effective date of SORNA on December 20, 2012.” (Docket entry no. 43 at p. 3). *102 Alternatively, defendant contends that “the effects of SORNA are sufficiently punitive to override the legislature’s preferred characterization of the statute as being civil in nature and non-punitive.” (Id at p. 4). Based upon his argument that SORNA is punitive in nature, defendant asserts that it violates the ex post facto clauses of the United States and Pennsylvania Constitutions. (Id. at pp. 4-5).
A hearing was conducted on January 23, 2015, at which time defendant testified and counsel for the parties presented oral argument. Defendant testified that upon completing his maximum sentence and being discharged from parole in 2004, he relocated to Florida where he continues to reside with his mother and her current husband. (T. P. 1/23/15 at p. 5). He stated that he has not been charged with a crime since his 2002 indecent assault offense, and currently subsides on social security disability due to the complete loss of sight in both eyes. (Id. at pp. 7-9). Defendant submits that if he is required to comply with the lifetime registration requirements of SORNA, he will be “judged, sentenced and punished a second time for a crime that was only done once.” (Id. at p. 11).
The defense confirmed during the hearing on January 23, 2015, that defendant is advancing two arguments in support of his reclassification request. First, defendant contends that his guilty plea date of October 7, 2002, should control his sexual offender registration obligations, such that his ten-year registration responsibilities had expired prior to the effective date of SORNA. (Id. at pp. 3-4, 21). Second, defendant submits that the retroactive application of SORNA’s lifetime registration requirement constitutes ex post facto punishment in contravention of the United States and Pennsylvania Constitutions. (Id. at *103 pp. 3-4). The Commonwealth opposes defendant’s ex post facto challenge, but concedes that no Pennsylvania court has considered an ex post facto attack in a case where the sexual offender registration requirement increased from ten years to a lifetime registration responsibility. {Id. at pp. 19-21).
II. DISCUSSION
(A) SEXUAL OFFENDER REGISTRATION REQUIREMENTS
After the state of New Jersey enacted a sexual offender registration and community notification statute referred to as “Megan’s Law,” N.J.S.A. 2C: 7-1 to 7-11, in the wake of the abduction, rape and murder of seven-year old Megan Kanka, and Congress passed federal legislation conditioning certain federal funding on states adopting a comparable registration and notification program, Pennsylvania enacted its first “Megan’s Law,” 42 Pa.C.S. §§ 9791-9799.6, on October 24, 1995. See Com. v. Gaffney, 557 Pa. 327, 328 n. 1, 733 A.2d 616,617 n. 1 (1999); Com. v. Williams, 557 Pa. 285, 287 n. 1, 733 A.2d 593, 594 n. 1 (1999) (“ Williams F). Megan’s Law I required registrants to verify their current addresses for a specified number of years, but did not authorize the “[dissemination of this information beyond local law enforcement officials.” Gaffney, 557 Pa. at 329-330, 733 A.2d at 617. In Williams I, the Supreme Court of Pennsylvania held that the procedure for determining whether an offender was a “sexually violent predator” under Megan’s Law I violated procedural due process guarantees by requiring the offender to rebut a presumption that [s]he was a sexually violent predator. Williams I, 557 Pa. at 304, 733 A.2d at 603 (“Accordingly, we find the Act’s imposition of the presumption that a person convicted of a predicate offense *104 is a sexually violent predator, and the requirement that the offender rebut the presumption, to be constitutionally repugnant.”).
In response to Williams I, the general assembly passed Megan’s Law II on May 10,2000, and “altered the manner in which an individual convicted of a predicate offense was adjudicated a sexually violent predator” by imposing upon the Commonwealth “the burden of proving such status by clear and convincing evidence.” Com. v. Williams, 51A Pa. 487, 495, 832 A.2d 962, 966 (2003) (“WilliamsIF). Under Megan’s Law II, an offender convicted of a predicate offense was required to: (1) register a current or intended residence with the PSP upon release from incarceration or commencement of probation or parole; (2) inform the PSP within ten days of a change in residence; and (3) register within ten days with a new law enforcement agency upon establishing residence in another state. Williams II, 574 Pa. at 496, 832 A.2d at 967. Sexually violent predators were obligated to register for their lifetime, while any other offender was obligated to register for either ten years or the offender’s lifetime, depending upon the predicate offense and number of convictions. Id. at 497 & n. 10-11, 832 A.2d at 967-968 & n. 10-11. In Williams II, the Supreme Court considered an ex post facto challenge to the retroactive application of Megan’s Law II, and held that Megan’s Law II’s registration, notification and counseling provisions were non-punitive, regulatory measures, but that the penalty provisions applicable to sexually violent predators were unconstitutionally punitive, albeit severable from the remainder of the act. Id. at 528, 832 A.2d at 986.
The Pennsylvania Legislature subsequently adopted the act of November 24,2004, P.L. 1243 (Act 152), which *105 was commonly known as Megan’s Law III. See Coppolino v. Noonan, 102 A.3d 1254, 1258 n. 2 (Pa. Cmwlth. 2014) (en banc). The Supreme Court later declared the adoption of Megan’s Law III as violative of the “single subject” rule of Article III, Section 3 of the Pennsylvania Constitution, and found “that the proper remedy for this violation of our constitution [wa]s to strike [Megan’s Law III] in its entirety.” Com. v. Neiman, 84 A.3d 603, 613-616 (Pa. 2013). Prior to the Supreme Court decision in Neiman, the general assembly had replaced Megan’s Law III with the Sexual Offender Registration and Notification Act (SORNA), 42 Pa.C.S. §§ 9799.10 et seq., which became effective on December 20,2012.[3] See Com. v. McDonough, 96 A.3d 1067, 1070 (Pa. Super. 2014); Sampolski, 89 A.3d 1288.
SORNA was adopted “[t]o bring the Commonwealth into substantial compliance with the Adam Walsh Child Protection and Safety Act of 2006,” “to further protect the safety and general welfare of the citizens of this Commonwealth by providing for increased regulation of sexual offenders,” “to require the exchange of relevant information about sexual offenders among public agencies and officials, and to authorize the release of necessary and relevant information about sexual offenders to members of the general public as a means of assuring public protection” in a manner which “shall not be construed as punitive.” 42 Pa.C.S. §§ 9799.10(1), 9799.11(b)(1)-(2). *106 SORNA establishes a three-tiered system of enumerated offenses requiring registration by sexual offenders for differing lengths of time. See 42 Pa.C.S. § 9799.14(b)-(d). A person who is convicted of indecent assault where the victim “is less than 13 years of age,” 18 Pa.C.S. § 3126(a) (7), is classified as a Tier III offender. See 42 Pa.C.S. § 9799.14(d)(8). Under Section 9799.15(a), an individual convicted of a Tier I sexual offense must register for fifteen years, whereas a Tier II offender must register for twenty-five years and a Tier III offender is obligated to register for the remainder of his or her life. See 42 Pa.C.S. § 9799.15(a)(1)-(3).
Section 9799.15(e)(3) of SORNA provides that an individual convicted of a Tier III sexual offense must appear quarterly “in-person at an approved registration site” in order to be photographed and to furnish or verify the registry information mandated by Section 9799.16(b).[4] 42 Pa.C.S. § 9799.15(e)(3). In addition to that periodic, in-person appearance, an offender must also “appear in-person at an approved registration site within three business days to provide current information” concerning any change in name, residence, employment, telephone number, “motor vehicle owned or operated,” temporary lodging, e-mail address, Internet communication designation, student enrollment, or “occupational and professional licensing.” 42 Pa.C.S. § 9799.15(g)(l)-(9). Moreover, a Tier III offender must “appear in-person at an approved registration site no less than 21 days in advance of travelling outside of the United States” to produce *107 information pertaining to dates of travel, destinations and temporary lodging. 42 Pa.C.S. § 9799.15(i)(l)-(3). An individual who is obligated to register pursuant to SORNA “may be subject to prosecution under 18 Pa.C.S. § 4915.1” for failure to comply with its registration and verification requirements. See 42 Pa.C.S. §9799.21(a).
Assuming arguendo that SORNA applies to Woodruff, Sections 9799.15(e), (g) and (i) require him to personally appear “at an approved registration site” to provide the mandated information. 42 Pa.C.S. § 9799.15(e), (g), (i). SORNA defines “an approved registration site” as “[a] site in this Commonwealth approved by the Pennsylvania State Police at which individuals subject to this subchapter may comply with this subchapter,” 42 Pa.C.S. § 9799.12 (emphasis added), and at first blush, appears to require Woodruff to travel to an approved registration site “in this Commonwealth” in order to furnish the required information. However, the federal Adam Walsh Child Protection and Safety Act states that although a sex offender must initially register “in the jurisdiction in which convicted,” [s]he must thereafter “register, and keep the registration current, in each jurisdiction where the offender resides,... is an employee, and ... is a student.” 42 U.S.C. § 16913(a). The Florida sexual offender registration statute likewise requires a Florida resident who is a sexual offender to register periodically at an approved Florida registration site. See West’s F.S.A. §§ 943.0435(1)(a)1.c, (14)(a)-(b) (effective Oct. 2014). The Commonwealth has stipulated that pursuant to SORNA, and in light of Woodruff’s residency in Florida since 2004, he is merely obligated to appear in-person at a Florida registration site, rather than at an approved registration site “in this Commonwealth.” Frequently Asked Questions, Megan’s Law Website, Pa. State Police, http://www.pameganslaw. *108 state.pa.us/faq.aspx?dt= (last visited Mar. 6, 2015, 11:36 AM).
(B) APPLICABILITY OF SORNA REGISTRATION REQUIREMENTS
If Woodruff is subject to SORNA, he would be classified as a Tier III sexual offender by virtue of his conviction under 18 Pa.C.S. § 3126(a)(7), and as a result, would be obligated to register for the remainder of his life. See 42 Pa.C.S. §§ 9799.14(d)(8), 9799.15(a)(3). Woodruff first contends that the applicability of SORNA should be determined by the date of his guilty plea date on October 7, 2002. (Docket entry no. 43 at p. 3). Based upon that reasoning, Woodruff posits that he should be deemed as having completed his ten-year registration responsibility under Megan’s Law II prior to the effective date of SORNA on December 20, 2012. (Id.).
The Superior Court has previously rej ected the argument that the sexual offender registration law which was in effect atthe time of a defendant’s guilty plea and sentencing should control the offender’s registration obligations. See Com. v. Benner, 853 A.2d 1068, 1072 (Pa. Super. 2004) (although Megan’s Law I was in effect on the dates of defendant’s guilty plea and sentencing, defendant was subject to the lifetime registration requirement of Megan’s Law II). When construing a statute such as SORNA, the reviewing court should endeavor to effectuate the legislature’s intent by applying the clear and unambiguous language of the statute. See Banfield v. Cortes, 2015 WL 668060, at *8 (Pa. 2015); Com. v. Postie, 2015 WL 660148, at *8 (Pa. Super. 2015). Section 9799.13 of SORNA clearly states that its registration and verification requirements are applicable to any person who was obligated to register as a sexual offender “prior to December 20, 2012, and who *109 had not fulfilled the individual’s period of registration as of December 20, 2012.” 42 Pa.C.S. § 9799.13(3)(i). Consequently, if Woodruff had not completed his period of registration by December 20, 2012, he is subject to SORNA’s registration requirements pursuant to Section 9799.13(3)(i). See Coppolino, 102 A.3d at 1262 n. 9 (“There is no dispute that Coppolino...had not fulfilled his period of registration as of December 20, 2012,” and as such, “he is required to register under Megan’s Law IV.”); A.S., 87 A.3d at 915 n. 4, 917, 922-923 (defendant, who was released from imprisonment on August 2, 2002, and had completed his ten-year registration period on August 2, 2012, was not subject to SORNA which became effective on December 20, 2012).
It is undisputed that upon being paroled from prison on October 14, 2003, Woodruff registered with the PSP as a sexual offender in compliance with Megan’s Law II and thereby commenced his ten-year registration period on that date. Thus, as of SORNA’s effective date of December 20, 2012, Woodruff had not yet completed his ten-year registration requirement. As a result, he is an individual who “was required to register with the Pennsylvania State Police pursuant to this subchapter prior to December 20, 2012, and who had not fulfilled [his] period of registration as of December 20, 2012.” 42 Pa.C.S. § 9799.13(3)(i). Accordingly, based upon the unambiguous language of Section 9799.13(3)(i), Woodruff is subject to the registration and verification requirements of SORNA, unless the application of that statute violates the ex post facto prohibition against the adoption of a law that imposes a greater punishment than the law annexed to the crime at the time that it was committed.
(C) EX POST FACTO CHALLENGE
*110 Woodruff alternatively contends that SORNA’s imposition of a lifetime registration responsibility upon him as a Tier III offender is violative of the ex post facto provisions of the United States and Pennsylvania Constitutions since the sexual offender registration law in effect on the dates of his offense, guilty plea and sentencing merely obligated him to register for a period of ten years. “Both the United States and Pennsylvania Constitutions prohibit ex post facto laws.” Coppolino, 102 A.3dat 1263. Article I, Section 10 of the United States Constitution provides that “[n]o State shall...pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts...” U.S. Const, art. I, § 10. Similarly, Article I, Section 17 of the Pennsylvania Constitution states that “[n]o ex post facto law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed.” Pa. Const, art. I, § 17. See Com. v. Perez, 97 A.3d 747, 750, 759 (Pa. Super. 2014).
“[T]he ex post facto clauses of the United States and Pennsylvania Constitutions are virtually identical in language, and the standards applied to determine ex post facto violations under both constitutions are comparable.” Com. v. Allshouse, 614 Pa. 229, 264, 36 A.3d 163, 184 (2012), cert. denied, 133 S. Ct. 2336 (U.S. 2013). A law violates these prohibitions if, inter alia, it “changes the punishment, and inflicts a greater punishment than the law annexed to the crime when committed.” Carmell v. Texas, 529 U.S. 513, 522 (2000); Coppolinio, supra. It must be determined whether the application of SORNA to Woodruff constitutes a permissibly retroactive non-punitive regulatory scheme or an impermissibly punitive ex post facto law.
*111 In Gaffney, the Supreme Court of Pennsylvania applied the ex post facto standard articulated by the United States Court of Appeals for the Third Circuit in Artway v. Attorney General, 81 F.3d 1235 (3d Cir. 1996) and E.B. v. Verniero, 118 F.3d 1077 (3d Cir. 1997) in finding that the application of Megan’s Law I’s registration requirements did not violate the federal or state ex post facto clauses. Gaffney, 557 Pa. at 337-339, 733 A.2d at 621-622. However, the Supreme Court in Williams //relied upon the seven factors identified by the United States Supreme Court in Kennedy v. Mendoza-Martinez, 372 U.S. 144 (1963) in considering an ex post facto challenge to Megan’s Law II. Williams II, 574 Pa. at 505-506, 524-525, 832 A.2d at 972-973, 984. Several months later, in Lehman v. Pennsylvania State Police, 576 Pa. 365, 839 A.2d 265 (2003), the Supreme Court clarified the controlling standard and held that “we are formally abandoning the Artway/Verniero test, adopting instead the Smith v. Doe test used in Williams,” for ex post facto challenges. Id. at 373, 839 A.2d at 271.
In Smith v. Doe, 538 U.S. 84 (2003), the United States Supreme Court articulated a two-prong analysis for determining whether a law inflicts “punishment” in contravention of the ex post facto clause of the federal constitution. First, the court must examine the legislature’s subjective purpose in promulgating the statute, and “[i]f the intention of the legislature was to impose punishment, that ends the inquiry.” Id. at 92; Perez, 97 A.3d at 751. If the stated intent of the statute is a civil and non-punitive scheme, the second step of the Smith inquiry requires the court to “examine whether the statutory scheme is so punitive either in purpose or effect as to negate [the legislature’s] intention to deem it civil.” Smith, supra; Lehman, 576 Pa. at 373-374, 839 A.2d at 271. Courts “ordinarily defer to the legislature’s stated intent,” and *112 “only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty.” Smith, supra; Com. v. Abraham, 619 Pa. 293, 306, 62 A.3d 343, 350 (2012), cert. denied, 133 S. Ct. 1504 (U.S. 2013).
The United States Supreme Court in Mendoza-Martinez identified the following seven factors that are to be considered in making this second-prong determination:
(1) Whether the sanction involves an affirmative disability or restraint;
(2) Whether it has historically been regarded as punishment;
(3) Whether it comes into play only on a finding of scienter;
(4) Whether its operation will promote the traditional aims of punishment — retribution and deterrence;
(5) Whether the behavior to which it applies is already a crime;
(6) Whether an alternative purpose to which it may rationally be connected is assignable for it; and
(7) Whether it appears excessive in relation to the alternative purpose assigned.
Williams II, 574 Pa. at 505, 832 A.2d at 973 (citing Mendoza-Martinez, 372 U.S. at 168-169); Coppolino, 102 A.3d at 1264. The foregoing criteria are “neither exhaustive nor dispositive, but are useful guideposts,” Smith, 538 U.S. at 97, and “no one factor controls the analysis in either direction.” Perez, 976 A.3d at 752. Nevertheless, “[i]n balancing these factors, some carry *113 more weight than others,” with the third and fifth factors being “of little weight” while the sixth factor “is one of the most important considerations.” Coppolino, 102 A.3d at 1264 (citing Smith, 538 U.S. at 105). Under the “clearest proof’ standard, “the Mendoza-Martinez factors must weigh heavily in favor of a finding of punitive purpose or effect in order to negate the general assembly’s intention that the act be deemed civil and remedial.” Williams II, 51A Pa. at 506, 832 A.2d at 973.
No Pennsylvania court has considered an ex post facto challenge to SORNA in the context of an increase in the duration of a sex offender’s registration requirements from ten years to the remainder of the offender’s life. Perez addressed the ex post facto ramifications for an offender who was classified as a Tier II offender and required to register for twenty-five years, Perez, 97 A.3d at 748-749, and Coppolino concerned an offender who had been previously designated as a lifetime registrant under Megan’s Law III, but directed to provide greater information more frequently under SORNA. Coppolino, 102 A.3d at 1259-1260. Moreover, the Supreme Court in In re J.B. only considered the due process deficiencies of the lifetime registration provisions for juvenile sex offenders, which applied an irrebuttable presumption of recidivism that was not universally true. In re. J.B., at *13 (“Given that juvenile offenders have a protected right to reputation encroached by SORNA’s presumption of recidivism, where the presumption is not universally true, and where there is a reasonable alternative means for ascertaining the likelihood of recidivating, we hold that the application of SORNA’s current lifetime registration requirements upon adjudication of specified offenses violates juvenile offenders’ due process rights by utilizing an irrebuttable presumption.”).
*114 (1) LEGISLATIVE INTENT
Without the benefit of decisional precedent addressing SORNA’s retroactive increase in registration and reporting requirements from ten-years to lifetime for offenders convicted under 18 Pa.C.S. § 3126(a)(7), and turning first to the general assembly’s subjective intent in adopting SORNA, Section 9799.11 clearly states that the stated purpose of SORNA is “to increase [Pennsylvania’s] regulation of sexual offenders in a manner which is nonpunitive” and to facilitate the exchange of relevant information about sexual offenders in a manner that “shall not be construed as punitive.” 42 Pa.C.S. § 9799.11(a)(2), (b)(2). Both the Superior Court and the Commonwealth Court have concluded that these policy declarations by the general assembly satisfy the first prong of the Smith framework relating to the legislature’s subjective intent to create a civil regulatory scheme rather than a criminal penalty. See Coppolino, 102 A.3d at 1265-1266; Perez, 97 A.3d at 751; McDonough, 96 A.3d at 1071 (“While Gaffney and Benner were decided prior to the effective date of SORNA, the same principles behind the registration requirements for sexual offenders under Megan’s Law apply to those subject to SORNA. Namely, to effectuate, through remedial legislation, the non-punitive goal of public safety.”). Therefore, since the first part of the Smith test has been satisfied, SORNA must be examined under the seven-factor test enunciated in Mendoza-Martinez to determine whether the effects of SORNA are sufficiently punitive to override the general assembly’s preferred categorization.
(2) PUNITIVE PURPOSE OR EFFECT
(a) Imposition of Affirmative Disability or Restraint
*115 SORNA requires Woodruff to appear quarterly to verify personal information, in addition to ad hoc appearances to update information as changes occur and to disclose the details of any international travel plans. In Smith, the United States Supreme Court stated that if the disability or restraint imposed by a sanction “is minor and indirect, its effects are unlikely to be punitive.” Smith, 538 U.S. at 100. Additionally, the Pennsylvania Supreme Court in Williams II held that the registration and notification provisions of Megan’s Law II “do not significantly restrain registrants, who remain ‘free to live where they choose, come and go as they please, and seek whatever employment they may desire.’” Williams II, 574 Pa. at 506, 832 A.2d at 973 (quoting Femedeer v. Haun, 227 F.3d 1244, 1250 (10th Cir. 2000)).
However, the Superior Court in Perez concluded that the more demanding reporting requirements in SORNA impose a restraint directly, rather than by way of a secondary effect. The Perez court reasoned that “[although some in-person visits for updates may be required based upon appellant’s free choices in life, such as moving to a new address or changing his appearance, the act requires these [periodic] in-person visits even if there is no change to his information whatsoever.” Perez, 97 A.3d at 754. For that reason, it “conclude[d] that the first Kennedy [v. Mendoza-Martinez] factor weighs in favor of finding SORNA punitive.”
In Coppolino, an en banc panel of the Commonwealth Court found that “the requirement that Coppolino appear in-person to verify certain information quarterly leaves Coppolino free to live as he chooses and does not prevent him from engaging in any activity.” Coppolino, 102 A.3d at 1270. The Commonwealth Court likewise held that *116 SORNA’s expanded disclosure provisions, palm print and DNA sample requirements, and foreign travel directives are not punitive. Id. at 1274-1277. Nevertheless, the Coppolino court concluded that the in-person reporting and verification mandates in Section 9799.15 impose “an affirmative disability or restraint on registrants by inhibiting their ability to travel freely.” Id. at 1277.
Based upon Perez and Coppolino, SORNA’s requirements that registrants appear in-person on a quarterly basis to verify or update personal information, and on an as-needed basis to divulge changes in information or international travel plans, impose an affirmative disability or restraint upon offenders. As such, the first Mendoza-Martinez factor weighs in favor of finding SORNA punitive.
(b) Historical Recognition as Punishment
The second factor to be weighed is whether the sanction in question has historically been regarded as punishment. See Mendoza-Martinez, 372 U.S. at 168. In Smith, the United States Supreme Court rejected the argument that Alaska’s sexual offender registration provisions were tantamount to probation and parole supervision, and reasoned that “[a] sex offender who fails to comply with the reporting requirement may be subjected to a criminal prosecution for that failure, but any prosecution is a proceeding separate from the individual’s original offense.” Smith, 538 U.S. at 102. The Pennsylvania Supreme Court in Williams II also dismissed the defense contention that the community notification provisions of Megan’s Law II were analogous to colonial era punishments, such as public shaming, humiliation, and banishment, and instead determined that “the disclosure of factual information concerning the local presence of a potentially harmful *117 individual is aimed, not at stigmatizing that individual, but at allowing potentially vulnerable members of the public to avoid being victimized,” such that any alleged punitive effect is “an inevitable consequence of the effectuation of the law’s remedial objective of protecting vulnerable members of the public.” Williams II, 578 Pa. at 511, 832 A.2d at 976.
The Superior Court in Perez declined to find SORNA’s registration requirements akin to probation or parole since, unlike a probationer or parolee, a SORNA registrant is not required to seek permission to move, change jobs or travel outside of the United States. Perez, 97 A.3d at 754 (citing Smith, 538 U.S. at 101-102). Thus, Perez “conclude[d] the second Kennedy v. [Mendoza-Martinez] factor weighs against finding SORNA punitive.” Id. In contrast, the Commonwealth Court in Coppolino adopted the reasoning of the concurring opinion in Perez, found that SORNA’s in-person reporting requirements “closely resemble the supervision afforded individuals on probation or parole,” and “determinefd] that this second factors weighs in favor of a finding that the quarterly verification provision is punitive.” Coppolino, 102 A.3dat 1270-1271.
Consequently, a conflict exists between the Superior Court and the Commonwealth Court as to whether the second Mendoza-Martinez factor weighs in favor of finding SORNA punitive or non-punitive in purpose or effect. The Superior Court has repeatedly stated that “[ujntil a decision of the Superior Court is overruled by the Supreme Court, such decision is the law of the Commonwealth.” Randt v. Abex Corp., 448 Pa. Super. 224, 232 n. 3, 671 A.2d 228, 232 n. 3 (1996). Indeed, we have previously noted that “[ujnder the doctrine of stare decisis, a panel decision of the Superior Court is binding *118 precedent upon a common pleas court unless and until it has been overturned by the Pennsylvania Supreme Court.” Erie Insurance Exchange v. Soroka, 2011 WL 2516797, at *8 (Lacka, Co. 2011), aff’d, 47 A.3d 1237 (Pa. Super. 2012). Noting that “the Superior Court declared that its decisions are the law of the Commonwealth until overruled by the Supreme Court,” the Commonwealth Court has “construe[d] this language to likewise apply to [the Commonwealth] Court’s decisions.” Hill v. Port Authority Transit System of Allegheny County, 125 Pa. Cmwlth. 69, 72 n. 4, 557 A.2d 430, 432 n. 4 (1989), app. granted, remanded, 524 Pa. 466, 573 A.2d 1026 (1990). In the event of conflicting decisions by the intermediate appellate courts, the Commonwealth Court has proclaimed that its decisions are controlling in matters within the exclusive jurisdiction of the Commonwealth Court. See Wetzel v. City of Altoona, 152 Pa. Cmwlth. 309, 314 n. 6, 618 A.2d 1219, 1222 n. 6 (1992) (“We agree...that where there is a divergence of opinion between the Commonwealth Court and Superior Court in workmen’s compensation matters, we must follow our own precedent.”).
The Superior Court of Pennsylvania has exclusive appellate jurisdiction of all appeals from final orders of the courts of common pleas, see 42 Pa.C.S. § 742, except for appeals involving state or local government bodies or agencies which are within the exclusive appellate jurisdiction of the Commonwealth Court. See 42 Pa.C.S. § 762. “Since any appeal in this case would fall within the jurisdiction of the Superior Court rather than the Commonwealth Court, see 42 Pa.C.S. §§ 742, 762, stare decisis would dictate that the Superior Court precedent would govern this issue on appeal.” Moses Taylor Hospital v. GSGSB, 46 Pa. D & C. 4th 176, 185 (Lacka. Co. 2000). Therefore, in light of the Superior Court precedent in *119 Perez, we hold that the second Mendoza-Martinez factor weighs against finding SORNA punitive.
(c) Requirement of Scienter
The third factor considers whether the sanction at issue becomes operative “only on a finding of scienter.” Mendoza-Martinez, 372 U.S. at 168. “The existence of a scienter requirement is customarily an important element in distinguishing criminal from civil statutes.” Kansas v. Hendricks, 521 U.S. 346, 362 (1997). In concluding that the scienter factor was entitled to “little weight” in its analysis of the Alaska statute, the United States Supreme Court in Smith observed that “[t]he regulatory scheme applies only to past conduct, which was, and is, a crime.” Smith, 538 U.S. at 105. The Pennsylvania Supreme Court in Williams II deemed it significant that some, but not all, predicate offenses triggering registration under Megan’s Law II could be committed without scienter. Williams II, 574 Pa. at 513, 832 A.2d at 977-978 (“Still, not all of Megan’s Law II’s predicate offenses require a finding of scienter for conviction.... The Act’s provisions, then, do not become applicable only upon a finding of scienter, thus supporting the conclusion that Megan’s Law II is not punitive pursuant to this Mendoza-Martinez factor.”).
Relying upon Smith, the Superior Court has held that this third factor “does not weigh in favor of concluding that SORNA is punitive in nature.” Perez, 97 A.3d at 755. Citing Williams II, the Commonwealth Court determined that predicate offenses under SORNA may also be committed without scienter, and similarly reasoned that the third factor “weighs in favor of a determination that the quarterly verification requirement is not punitive.” Coppolino, 102 A.3d at 1271-1272. Hence, the third Mendoza-Martinez factor, which is admittedly entitled to *120 “little weight,” militates against a finding that SORNA is punitive.
(d) Effect of Promoting Deterrence and Retribution
The fourth relevant factor is whether SORNA has the effect of promoting deterrence and retribution which are the traditional goals of punishment. Although the Superior Court acknowledged in Perez that “[t]here can be no doubt...that [SORNA] has a deterrent purpose and effect,” it nonetheless held that “taking into account the high risk of recidivism, the general assembly is permitted to have some deterrent and retributive effects in its legislation as long as they are ‘consistent with regulatory objectives and are reasonably related to the danger of recidivism.’” Perez, 97 A.3d at 756 (quoting State v. Torsclair, 89 So. 3d 340, 353 (La. 2012)). Referencing the rationale in Williams II “that the primary purpose of the registration and notification requirements was to protect prospective victims,” and “that the additional strictures of Megan’s Law are not likely to deter crime more than the criminal sentences for the predicate crimes in question,” the Commonwealth Court has also concluded that the fourth “factor cannot weigh in favor of finding that the quarterly verification provision is punitive.” Coppolino, 102 A.3d at 1272. In light of the consonant holdings in Perez and Coppolino, the fourth factor weighs against finding SORNA to be punitive.
(e) Application to Past Criminal Conduct
The fifth factor, which is also entitled to “little weight,” Smith, 538 U.S. at 105, is whether the behavior to which the sanction applies is already a crime. Mendoza-Martinez, 372 U.S. at 168. The Smith Court deemed it significant that “[t]he obligations the statute imposes are the responsibility *121 of registration, a duty not predicated upon some present or repeated violation.” Smith, supra. In Perez, the Superior Court stated that it was adopting “the Supreme Court’s rationale in concluding that while past conduct is the beginning point of the statute, this consideration is proper, because the general assembly’s concern is the high rate of recidivism.” Perez, 97 A.3d at 757.
However, the Commonwealth Court employed different reasoning in Coppolino and determined that the fifth “factor weighs in favor of a finding that the quarterly verification provision is punitive.” Coppolino, 102 A.3d at 1273. The Commonwealth Court analyzed Williams II where “the Pennsylvania Supreme Court held that because the determination that an individual was [a sexually violent predator], and thus subject to lifetime registration, was not based upon only the commission of a crime, but upon a determination that the individual suffered from a mental abnormality or personality disorder, this factor was not met.” Coppolino, 102 A.3d at 1272 (citing Williams II, 574 Pa. at 515, 832 A.2d at 978-979). The Commonwealth Court remarked that “[i]n this case, by contrast, the only trigger for the provisions Coppolino complains of is, as noted above, conviction for a qualifying predicate offense.” Id. at 1272-1273. According to Coppolino, “[ujnlike in Williams [II], no additional assessment or determination is required before an individual is subject to the sanctions complained of by Coppolino.” Id. at 1273.
Once again, the Superior Court and the Commonwealth Court have formulated discordant analyses and conclusions with respect to the fifth Mendoza-Martinez factor. As discussed above, any appeal in this matter is within the exclusive jurisdiction of the Superior Court where Superior Court decisions are regarded as “the law *122 of the Commonwealth” until reversed by the Supreme Court. Therefore, in accordance with the Superior Court holding in Perez, we find that the fifth factor does not provide support for concluding that SORNA is punitive in nature.
(f) Rational Connection to an Alternative Purpose
The sixth factor, whether the statute’s sanction is rationally connected to an alternative, non-punitive purpose, is the “most significant” factor in determining whether the statute’s effects are non-punitive. Smith, 538 U.S. at 102 (quoting United States v. Ursery, 518 U.S. 267, 290 (1996)). In enacting SORNA, “the general assembly determined that sex offenders pose a high risk of recidivism and ‘protection of the public from this type of offender is a paramount governmental interest.’” Coppolino, 102 A.3d at 1273 (quoting 42 Pa.C.S. § 9799.11(a)(4)). The legislature further declared that the release of information about sexual offenders to public agencies and the general public “will further the governmental interests of public safety and public scrutiny of the criminal and mental health systems so long as the information released is rationally related to the furtherance of those goals.” 42 Pa.C.S. § 9799.11(a)(6).
Both the Superior Court and the Commonwealth Court have concluded that SORNA’s registration and verification requirements are rationally connected to the Commonwealth’s compelling interest in preventing sexual crimes, particularly those committed against children, and that this alternative purpose weighs against finding SORNA punitive. Coppolino, supra; Perez, 97 A.3d at 757. Their sound reasoning in that regard weighs in favor of decreeing that SORNA’s registration and verification provisions are not punitive.
*123 (g) Excessiveness in Relation to Alternative Purpose
The seventh and final factor is whether SORNA appears excessive in relation to the alternative non-punitive purpose of protecting the public from criminal activity by sex offenders who pose a high risk of recidivism. The United States Supreme Court in Smith rejected the court of appeals’ conclusion that Alaska’s registration statute was excessive in relation to its regulatory purpose since it applied to all sex offenders without regard to their individual rehabilitation and future dangerousness. In reversing that finding, the Smith court reasoned:
The ex post facto clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences.... The State’s determination to legislate with respect to convicted sex offenders as a class, rather than require individual determination of their dangerousness, does not make the statute a punishment under the ex post facto clause.
In the context of the regulatory scheme, the State can dispense with individual predictions of future dangerousness and allow the public to assess the risk on the basis of accurate, nonprivate information about the registrants’ convictions without violating the prohibitions of the ex post facto clause.
Smith, 538 U.S. at 103-104.
In analyzing the seventh Mendoza-Martinez factor, the Pennsylvania Supreme Court in Williams II stated that in order for the statutory sanctions to be deemed disproportionate, “the effects of a measure must be ‘extremely onerous’ to constitute punishment, as even the deprivation of one’s livelihood does not qualify.” Williams *124 II, 51A Pa. at 520, 832 A.2d at 982 (quoting Veniero, 119 F.3d at 1101). Noting that the general assembly expressly declared in adopting SORNA that “[s]exual offenders pose a high risk of committing additional sexual offenses and protection of the public from this type of offender is a paramount governmental interest,” 42 Pa.C.S. § 9799.11(a)(4), the Superior Court in Perez “conclude[d] that [SORNA] is not excessive towards its non-punitive objective, which weighs against finding SORNApunitive.” Perez, 97 A.3d at 758. The Commonwealth Court has similarly held that “[g]iven that the Supreme Court in Williams [II] held that quarterly verification for [sexually violent predators] and the registration and notification provisions of Megan’s Law II were not disproportionate to the public safety purpose they served, the incrementally greater requirements of [SORNA], including quarterly verification, is likewise not disproportionate to the purpose of ensuring public safety.” Coppolino, 102 A.3d at 1274. Thus, the regulatory scheme set forth in SORNA is not excessive in relation to the alternative purpose assigned to that statute.
(h) Balancing of Mendoza-Martinez Factors
After making its findings with respect to the foregoing seven factors, the court must then weigh those findings to determine whether the statute is so punitive in purpose or effect as to negate the general assembly’s intention to deem it civil. In conducting that analysis, we remain mindful that only the “clearest proof’ will suffice to override the legislature’s preferred classification, and that the third and fifth factors are “of little weight” while the sixth factor is “one of the most important considerations.” Smith, 538 U.S. at 102, 105; Perez, 97 A.3d at 751.
Megan’s Law II required Woodruff to originally register *125 with the PSP and to provide fingerprints and photographs to the PSP. Residence verification forms would periodically be forwarded to Woodruff by the PSP, and within ten days of his receipt of that form, he was required to personally appear at an approved registration site to complete the form and be photographed. Upon relocating to Florida, he was obligated to register with the Florida authorities and to periodically appear in-person at an approved Florida registration site. Under Megan’s Law II, Woodruffs ten-year registration responsibilities would have ceased on October 14, 2013.
However, SORNA now requires Woodruff to appear in-person at an approved registration site four times per year to be photographed and verify his registry information. In the event of any changes in his name, residence, employment, student enrollment or contact information, he must appear in-person at a registration site within three days to furnish updated information. Woodruff must also appear in-person at such a site in advance of travelling outside of the United States in order to provide information regarding his dates of travel, intended destinations and temporary lodging.
In balancing the Mendoza-Martinez factors, the Superior Court in Perez stated that “the only factor that weighs in favor of finding the statute punitive is the mandatory in-person appearances to update information even if there is no information to update.” Perez, 97 A.3d at 758. In concluding that Perez had not adequately demonstrated that SORNA’s effects are sufficiently punitive to overcome the general assembly’s categorization of SORNA as non-punitive, the Superior Court reasoned:
After considering all seven factors, as analyzed above, we conclude that the one factor weighing in favor of *126 finding SORNA punitive does not ultimately make the statute’s retroactive application unconstitutional. Although we conclude the mandatory in-person appearance requirement imposes an affirmative constraint on [Perez], we nevertheless conclude that the restraint is relatively minor when balanced against the remaining factors. As our Supreme Court has noted in past cases, the greater restraints imposed by sex offender registration stem from the public’s benefit of said registration and the consequences that flow therefrom. However, our Supreme Court has also instructed that those effects, while not insignificant, are merely secondary and collateral to the requirements themselves.
* * *
Based on all of these considerations, we ultimately conclude that [Perez] has not shown by the “clearest proof’ that the effects of SORNA are sufficiently punitive to overcome the general assembly’s preferred characterization, [citation omitted]. Therefore, we further conclude that the retroactive application of SORNA to [Perez] does not violate the ex post facto clause of the federal constitution.
Id. at 758-759.
In contradistinction, the Commonwealth Court in Coppolino held that the in-person reporting requirements in SORNA impose an affirmative disability or restraint, are more severe and demanding than parole, and appear excessive in relation to the alternative purpose of public safety. Coppolino, 102 A.3d at 1277-1278. Reaching a contrary conclusion to Perez, the Coppolino court declared:
*127 However, given the substantial restraint or disability this provision imposes on registrants, we do not believe that this provision is proportionate to the public purpose it serves. On balance, this disproportionality, along with the similarity to the traditional punishment of parole and the substantial infringement of a fundamental right, we conclude that this provision is punitive. As such, applying this provision to an individual convicted under a prior version of Megan’s Law would violate the constitutional prohibition against ex post facto laws.
Id. at 1278. The Commonwealth Court further concluded that this unconstitutionally punitive provision is severable, and upheld the remaining provisions of SORNA after striking “the requirement that such updates be made in-person.” Id. at 1279 (“After this excision, the remainder of [SORNA] is capable of execution in accordance with the legislative intent of registering, monitoring, and disseminating information regarding sexual offenders.”).
In accordance with the Superior Court precedent that would be applicable in any appeal in this matter, we have determined that only one of the seven Mendoza-Martinez factors weighs in favor of finding SORNA punitive. Although the transition from single, annual, in-person reporting for ten years to quarterly, annual, in-person appearances, as well as potential additional ad hoc appearances, impose a markedly increased affirmative disability or restraint, that sole factor does not “weigh heavily in favor of a finding of punitive purpose or effect in order to negate the general assembly’s intention that the act be deemed civil and remedial.” Williams II, 51A Pa. at 506, 832 A.2d at 973. Hence, Woodruff has not demonstrated by the “clearest proof’ that SORNA is so punitive in purpose or effect as to overcome the general assembly’s *128 preferred characterization, nor has he established that the retroactive application of SORNA violates the federal ex post facto clause.
With respect to the ex post facto provision of the Pennsylvania Constitution, the Supreme Court has stated that the standards governing Article I, Section 17 of the Pennsylvania Constitution “are comparable” to the federal criteria, Alshouse, 614 Pa. at 264,36 A.3d at 184, whereas the Commonwealth Court has stated that the federal and state ex post facto prohibitions “are subject to the same analytical framework.” Coppolino, 102 A.3d at 1263. Woodruff does not contend that the ex post facto clause of the Pennsylvania Constitution provides greater protection than Article I, Section 10 of the federal constitution. Consequently, based upon the foregoing analysis pursuant to the federal standard, we conclude that SORNA’s registration regime is also constitutional under the state ex post facto clause, and that Woodruff is not entitled to his requested relief. An appropriate order follows.
ORDER
And now, this 6th day of March, 2015, upon consideration of defendant’s “petition to reassess or reclassify period of registration under PA registration of sexual offender’s act,” the Commonwealth’s response thereto, the memoranda of law submitted by the parties, and the testimony and argument presented during the evidentiary hearing on January 23, 2015, and based upon the reasoning set forth in the foregoing memorandum, it is hereby ordered and decreed that defendant’s “petition to reassess or reclassify period of registration under PA. Registration of sexual offender’s act” is denied.

. In addition to registering with and providing fingerprints and photographs to the PSP, defendant was obligated to notify the PSP of any change in residence “within ten (10) calendar days of moving.” (Docket entry no. 23 at ¶ 2(a), (b) and (d)). A residence verification form would periodically “be sent to [defendant’s] registered address,” and “within ten (10) days of receipt of the form,” defendant was required to “personally appear...at any Pennsylvania State Police Station to complete the form and be photographed.” (Id. at ¶ 2(f)). In the event that defendant relocated “outside the Commonwealth of Pennsylvania,” he was obligated to “register with the appropriate law enforcement agency of another state within ten (10) calendar days of moving.” (Id. at ¶ 2)(c)). Furthermore, defendant was required to “register with the appropriate authorities in any state in which [defendant was] employed, a student or carried] on a vocation.” (Id. at ¶ 2(e)).

. Defendants who have challenged the application of sexual offender registration requirements have done so by filing a “petition to enjoin the requirement” of registration, see Com. v. Sampolski, 89 A.3d 1287, 1288 (Pa. Super. 2014), a “petition to avoid additional sex offender registration requirements,” Com. v. Nase, 104 A.3d 528 (Pa. Super. *101 2014), and a “petition for writ of mandamus” to compel the Pennsylvania State Police to change a defendant’s sexual offender registration status. See A. S. v. Pennsylvania State Police, 87 A.3d 914, 916 & n. 3 (Pa. Cmwlth. 2014). The Superior Court of Pennsylvania recently observed “that our case law has yet to adopt a settled procedure for challenging the retroactive application of a Megan’s Law’s registration requirement,” but concluded that it “need not decide the precise mechanism by which a defendant may challenge the retroactive application of a Megan’s Law’s registration requirement.” Com. v. Bundy, 96 A.3d 390, 394 (Pa. Super. 2014). Section 9799.23(b)(2) of SORNA appears to deprive the court of the authority to grant the relief requested by Woodruff, and states that “[e]xcept as provided in section 9799.17 (relating to termination of period of registration for juvenile offenders), the court shall not have authority to relieve a sexual offender from the duty to register under this subchapter or to modify the requirements of this subchapter as they relate to the sexual offender.” 42 Pa.C.S. § 9799.23(b)(2). The Commonwealth has not challenged the propriety of defendant’s “petition to reassess or reclassify period of registration,” and for that reason, it is unnecessary to decide whether defendant has employed the proper procedure to contest the retroactive application of Pennsylvania’s latest sexual offender registration requirements.

. Although the Commonwealth Court recently referred to the current sexual offender registration statute as Megan’s Law IV, see Coppolino, 102 A.3d at 1258-1259 & n. 1, the Supreme Court and the Superior Court have both identified that statute as SORNA. See In reJ. B., 2014 WL 7369785 at *1-13 (Pa. 2014); McDonough, supra', Sampolski, supra. See also A.S., 87 A.3d at 915 n. 3 (identifying 42 Pa.C.S. §§ 9799.10-9799.41 as SORNA). For ease of reference, the present statute will be identified as SORNA in this decision.

. Section 9799.16(a) requires the PSP to “create and maintain” a statewide registry of sexual offenders, and any individual required to register under SORNAmust provide the registry with detailed information such as the offender’s name, Internet identification, telephone numbers, social security number, residence, employer, school, motor vehicle, date of birth, and copy of passport. 42 Pa.C.S. § 9799.16(a),(b)(l)-(14).